**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>Laurence Cushman and Carlene Cushman,<br><br>                      Debtors | Chapter 13<br>Case No. 14-10692 |
| Resurgent Capital Services, L.P.,<br><br>                      Plaintiff<br>  v.<br><br>William K. Harrington, United States Trustee<br> for Region 1,<br><br>                      Defendant | Adv. Proc. No. 16-1017 |

**MEMORANDUM OF DECISION ON**
**DEFENDANT'S RENEWED MOTION TO DISMISS**

William K. Harrington, United States Trustee for Region 1 (the "U.S. Trustee"), has moved for dismissal of the complaint filed by Resurgent Capital Services, L.P. Citing Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the U.S. Trustee asserts that dismissal is warranted because this proceeding is not ripe. Alternatively, the U.S. Trustee asks the Court to exercise its discretion to dismiss the request for declaratory relief under 28 U.S.C. § 2201(a). The Court is not persuaded on either score and will therefore deny the motion to dismiss.

The U.S. Trustee's ripeness arguments are directed to this Court's subject matter jurisdiction. *See* <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 362-63 (1st Cir. 2001) (observing that ripeness is an aspect of subject matter jurisdiction that may be challenged under Fed. R. Civ. P. 12(b)(1)); <u>Downeast Ventures, Ltd. v. Washington Cnty.</u>, 2005 WL 3409483, at *1 (D. Me.

Dec. 12, 2005) ("[A] challenge concerning a litigation's ripeness directly concerns the court's jurisdiction because it amounts to a contention that the plaintiff has failed to present a justiciable case or controversy . . . ."). "The proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1)." Valentin, 254 F.3d at 362. Although the U.S. Trustee has formally tied his ripeness challenge to both Rule 12(b)(1) and Rule 12(b)(6), the Court treats the motion to dismiss for lack of ripeness as though it had been brought solely under Rule 12(b)(1). See St. Clair v. City of Chicago, 880 F.2d 199, 201 (9th Cir. 1989) ("Like other challenges to a court's subject matter jurisdiction, motions raising the ripeness issue are treated as brought under Rule 12(b)(1) even if improperly identified by the moving party as brought under Rule 12(b)(6).").

      There are two ways for a litigant to contest subject matter jurisdiction under Rule 12(b)(1). Valentin, 254 F.3d at 363. "The first way is to mount a challenge which accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Id. "The second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position." Id. If a challenge tracks the first course by contesting the sufficiency of the plaintiff's jurisdictionally-significant assertions, the trial court "must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in [the plaintiff's] favor, and dispose of the challenge accordingly." Id.

Once challenged, the party invoking the court's subject matter jurisdiction bears the burden of proving facts sufficient to establish ripeness. *See* Labor Relations Div. of Constr. Indus. of Mass. v. Healey, 844 F.3d 318, 326 (1st Cir. 2016); Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008). The standard for establishing the factual predicates essential to prove jurisdiction requires the plaintiff to "state a claim for relief that is plausible on its face." Healey, 844 F.3d at 326 (quotation marks omitted).

In this matter, the U.S. Trustee's ripeness arguments challenge the sufficiency of Resurgent's jurisdictionally-relevant assertions, rather than their accuracy. Thus, the Court has looked to the complaint, the exhibits to the complaint, and the U.S. Trustee's redacted, renewed motion to dismiss to derive the following facts – which are accepted as true for the purposes of this decision.

## I.     FACTUAL & PROCEDURAL BACKGROUND

Resurgent is an entity that services debt for both affiliated and non-affiliated entities, and files proofs of claim for such debt in bankruptcy cases across the country. After Official Form B10 was approved in April 2013, Resurgent used that form to file proofs of claim. Official Form B10 included the following declaration above the form's signature line: "I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief."[1]

In February 2015, the United States Trustee Program ("USTP") began investigating Resurgent's nationwide proof-of-claim practices by moving for examinations and production of

---

[1] Official Form B10 was replaced by Official Form 410 in April 2016. The revised form contains the following signatory declaration: "I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct."

- 3 -

documents under Fed. R. Bankr. P. 2004 in two bankruptcy cases pending in the Western District of Missouri (the "Missouri cases"). Before April 2015, all Resurgent proofs of claim were filed under the signature and using the ECF credential of a single Resurgent claims processor named Susan Gaines. Many of these proofs of claim were not reviewed by Ms. Gaines personally but were instead reviewed by other Resurgent claims processors, whom Ms. Gaines had trained and directed to use both her signature and her ECF credential for filing.

In April 2015, Resurgent changed its proof-of-claim practices to ensure that each Resurgent employee who reviews a proof of claim files that proof of claim using his or own signature and ECF credentials. Resurgent also directed Ms. Gaines to review each Resurgent claim that had been filed in any open bankruptcy case under her ECF credentials that she had not personally reviewed at the time of filing.

As a result of its investigation in the Missouri cases, the USTP concluded that certain Resurgent proof-of-claim practices were sanctionable under Fed. R. Bankr. P. 9011 or 11 U.S.C. § 105. The USTP asserted, *inter alia*, that Resurgent had routinely violated Rule 9011 in its pre-April 2015 practice of permitting claims processors to use Ms. Gaines's signature and ECF credential on all Resurgent proofs of claim, regardless of whether Ms. Gaines had reviewed such claims. The USTP also criticized Resurgent's practice of filing a proof of claim even when Resurgent was aware that the claim would be disallowed if a party objected based on the statute of limitations. The USTP additionally asserted that Resurgent had frequently failed to comply with the requirements of Fed. R. Bankr. P. 3001(c)(1) and (c)(3).

Resurgent engaged in settlement discussions with the USTP regarding its pre-April 2015 practice of permitting the filing of proofs of claim under the signature and with the ECF

credentials of an individual who had not personally reviewed the claims. In June 2016, these discussions ended when the USTP demanded that Resurgent resolve the issue by paying a monetary settlement of $18 million and withdrawing or amending every pending proof of claim that had been filed under the ECF credentials of an individual who had not personally reviewed the proof of claim. The USTP told Resurgent's counsel that unless Resurgent promptly agreed to these demands, further negotiations would be fruitless and the USTP would promptly bring the dispute to judicial resolution, either in the Missouri cases or elsewhere. In response, Resurgent stated that it would review its pre-April 2015 proofs of claim and withdraw or amend any claim in which it found inaccuracies, but that it considered the USTP's demand for $18 million unreasonable. Resurgent further stated that, in light of the "take-it-or-leave-it" nature of the USTP's demand, it had become clear that a consensual resolution of the issue could not be obtained. In reply, the USTP agreed that further discussions would not be productive.

The case that gave rise to this proceeding began in August 2014, when Laurence and Carlene Cushman filed a petition for relief under chapter 13 of the Bankruptcy Code in this district. Several months later, Resurgent filed a proof of claim against the debtors' estate on behalf of LVNV Funding, LLC, using Official Form B10. Pursuant to Resurgent's then-standard practice, its employee, Nancy Gosnell, reviewed the information contained in LVNV's proof of claim against the Cushmans before affixing Ms. Gaines's signature to the form's signature line and filing the form under the ECF credential assigned to Ms. Gaines. Ms. Gaines did not personally review this proof of claim before it was filed.

In July 2016, Resurgent filed this adversary proceeding against the U.S. Trustee in the Cushmans' case, seeking a declaratory judgment (a) that it is not subject to sanctions under

- 5 -

Bankruptcy Rule 9011, section 105 of the Bankruptcy Code, or any other source of authority based on the proof of claim that it filed in the Cushmans' case; and (b) that it need not amend that proof of claim to the extent that the claim is factually accurate. Resurgent also filed two other adversary complaints for similar declaratory relief – one in a bankruptcy case pending in the Northern District of Texas and the other in one of the Missouri cases.[2] After Resurgent initiated these actions, the USTP then filed its own adversary proceedings in the Missouri cases. In those proceedings, the USTP requested, *inter alia*, "[a]ppropriate remediation and monetary relief to . . . the bankruptcy system" for Resurgent's practice of "robo-signing" claims, as well as injunctive relief prohibiting Resurgant from filing "robo-signed" claims in future.

The U.S. Trustee also moved to dismiss Resurgent's adversary complaint in this case, asserting that dismissal was required because the controversy was unripe, and alternatively, that dismissal was appropriate under the discretion granted by the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

## II.  DISCUSSION

The Court's ability to issue declaratory relief stems from the Declaratory Judgment Act. In general, the Act provides that "[i]n a case of actual controversy within its jurisdiction" a federal court "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

---

[2] Resurgent has since voluntarily dismissed its declaratory judgment action in Missouri.

### A. The Ripeness Doctrine

A request for declaratory relief may not be entertained unless it arises in the context of a dispute that is ripe for judicial resolution. Verizon New England, Inc. v. Int'l Bhd. of Elec. Workers Local No. 2322, 651 F.3d 176, 188 (1st Cir. 2011). The ripeness doctrine is "mandated by the constitutional requirement that federal jurisdiction extends only to actual cases or controversies." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995) (citing U.S. Const. art. III, § 2). The doctrine also has roots in prudential considerations of judicial restraint from unnecessary or premature decision of constitutional questions. Sindicato Puertorriqueno de Trabajadores v. Fortuno, 699 F.3d 1, 8-9 (1st Cir. 2012).

With respect to ripeness, both parties cite Abbott Laboratories v. Gardner, 387 U.S. 136 (1967) (which has been abrogated in part on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977)). In that decision, the Supreme Court explained that the "basic rationale" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs., 387 U.S. at 148-49. The Court further explained that the ripeness doctrine has two aspects, requiring courts "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 149.

Following Abbott Laboratories, the First Circuit Court of Appeals has routinely evaluated two factors in determining whether an action seeking declaratory relief is ripe: first, the extent to which the issues are fit for judicial review and, second, the hardship to the parties from declining

to issue a declaratory judgment. *See, e.g.* Healey, 844 F.3d at 326; Verizon New England, 651 F.3d at 188; Ernst & Young, 45 F.3d at 535; Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 692 (1st Cir. 1994).

The first branch of the ripeness analysis – the fitness of the issues for review – "typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." Ernst & Young, 45 F.3d at 535. The fitness inquiry concerns the timing of the request for relief, and is grounded in both the constitutional prohibition against advisory opinions and the prudential interest in avoiding premature or unnecessary decision of constitutional issues. Fortuno, 699 F.3d at 8. The second branch of the ripeness analysis – the hardship to the parties of denying review – involves a prudential analysis of the utility of judicial review. *See* id. at 9; Narragansett Indian Tribe, 19 F.3d at 693. The key question concerns the "usefulness of a declaratory judgment, that is, the extent to which the desired declaration would be of practical assistance in setting the underlying controversy to rest." Ernst & Young, 45 F.3d at 537 (quotation marks omitted).

The Supreme Court and the First Circuit have summarized the ripeness inquiry in the declaratory judgment context by stating that ultimate test is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007); McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 70 (1st Cir. 2003) (quoting Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506 (1972)). The First Circuit has also stated that although both prongs of the test must be satisfied, "a strong showing on one may compensate for a weak one on the other." McInnis-Misenor, 319 F.3d at 70.

With the foregoing general principles in mind, the Court will apply the Abbott Laboratories test to the pertinent facts raised in this proceeding.

### 1. **Is the Parties' Dispute Fit for Judicial Determination?**

The U.S. Trustee does not address the "fitness" prong of the ripeness analysis in his motion to dismiss. To a certain extent, the Court views that silence as an acknowledgement that the parties' dispute is fit for judicial review. Nevertheless, the Court will address the fitness prong of the ripeness doctrine in the discharge of its duty to verify subject matter jurisdiction. *See* Blanchette v. Conn. Gen. Ins. Corps., 419 U.S. 102, 138 (1974); McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004).

Resurgent's complaint seeks a declaration that it is not subject to sanctions under Fed. R. Bankr. P. 9011 for filing a proof of claim in a case that is currently pending in this Court. The U.S. Trustee asserts that Resurgent engaged in misconduct when it filed that proof of claim. The parties' dispute concerns the application of legal standards to Resurgent's prior conduct. The propriety of Resurgent's conduct will not be placed in sharper focus by events that have not yet occurred (or may never occur). All events leading to Resurgent's alleged liability under Rule 9011 have already occurred. *Cf.* Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir. 1990) (concluding that the plaintiff's claim was unripe for resolution when the plaintiff's only alleged injury was "contingent on events that may not occur as anticipated or may not occur at all"). Moreover, there are no administrative or regulatory actions that must be undertaken by the USTP before the question of Resurgent's liability can properly be determined. As both parties recognize, the U.S. Trustee has the power to raise issues in litigation; it does not have the power to make rules affecting the parties' rights. *Cf.* Roosevelt Campobello Int'l Park Comm'n v.

EPA, 684 F.2d 1034, 1040 (1st Cir. 1982) (concluding that petitioners' challenges to an EPA permit were not fit for review because the permit would not confer "clean air" rights unless and until the EPA took "another important, directly related, agency action"). In these respects, the parties' dispute is sufficiently crystallized to warrant judicial determination at this time.

The First Circuit has instructed that, "[p]erhaps the most important consideration in determining whether a claim is ripe for adjudication is the extent to which 'the claim involves uncertain and contingent events that may not occur as anticipated, or indeed may not occur at all.'" Lincoln House, 903 F.2d at 847 (quoting 13A Wright and Miller, Federal Practice and Procedure § 3532.2, at 141 (1984)). Viewed through this lens, the Court is hard-pressed to see which events in this case could be deemed uncertain or contingent. True, the U.S. Trustee has not commenced an action against Resurgent in the Cushmans' case. But the U.S. Trustee makes no bones about its belief that Resurgent has violated the Federal Rules of Bankruptcy Procedure in that case. The Court infers that the U.S. Trustee's demands to Resurgent are predicated on conduct occurring in many courts, including the conduct involved in the Cushmans' case. There is nothing speculative or contingent about the events that undergird the parties' dispute here.

> 2. **What is the Hardship from Withholding Declaratory Relief? Conversely, what is the Utility of Issuing Such Relief?**

The second branch of the ripeness analysis "focuses on the hardship that may be entailed in denying judicial review." Ernst & Young, 45 F.3d at 536. "Though the hallmark of cognizable hardship is usually a direct and immediate harm, other kinds of injuries occasionally may suffice." Id. In "special circumstances, an injury sufficient to impute ripeness may also be found when a plaintiff must presently decide to expend substantial resources which may turn out to be wasted, depending on later clarification of the law." Id. The ultimate question is "whether

- 10 -

granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest." Narragansett Indian Tribe, 19 F.3d at 693.

The First Circuit has applied the "hardship" element in evaluating ripeness on numerous occasions. *See, e.g.*, Roman Catholic Bishop v. City of Springfield, 724 F.3d 78, 92 (1st Cir. 2013); Verizon New England, 651 F.3d at 188-90; McInnis-Misenor, 319 F.3d at 73; Ernst & Young, 45 F.3d at 539-41; Narragansett Indian Tribe, 19 F.3d at 693-94; Lincoln House, 903 F.2d at 847-48; Roosevelt Campobello Int'l Park Comm'n, 684 F.2d at 1040-41. The Court has focused on the nature of the requested relief and the plaintiff's allegations of the utility of review (or the hardship of denying review). For example, when the Roman Catholic Bishop challenged the facial constitutionality of a city ordinance limiting changes to the exterior of a church on allegations that the requirements of the ordinance imposed delay, uncertainty, and expense with respect to its use of the church, the First Circuit concluded that the dispute was ripe and that hardship had been established. Roman Catholic Bishop, 724 F.3d at 92. The Court has been more reluctant to recognize hardship when the allegations of injury to a legal right were contingent upon a chain of events that might not occur. *See* McInnis-Misenor, 319 F.3d at 72-73 (concluding that complaint for relief under the ADA was not fit for review because alleged injury was contingent upon multiple events including plaintiff's pregnancy, and that plaintiff had not established hardship because court could likely render effective remedy if she later became pregnant); Ernst & Young, 45 F.3d at 538-41 (concluding that suit was not fit for review because asserted injury was predicated on a string of contingencies, and that the contingent nature of the claim had implications for hardship too); Lincoln House, 903 F.2d at 847 (ruling that claim was

- 11 -

unripe because the only injury alleged was contingent upon the outcome of a separate suit); Roosevelt Campobello Int'l Park Comm'n, 684 F.2d at 1040-41 (ruling that petitioners had not established hardship though they might suffer a "theoretical harm" in court denying them early notice of whether agency actions had been proper, where respondent agency would have to take additional steps before the rights at issue could arise).

In Verizon New England, Verizon brought an action against a union, seeking multiple forms of relief, including a declaratory judgment. 651 F.3d at 179. The case arose of out of four alleged violations of a collective bargaining agreement (CBA) between Verizon and the union. Id. The trial court granted summary judgment to the union on Verizon's request for declaratory relief because two of the alleged violations presented no threat of recurrence and because declarations regarding the other two alleged violations would be "too abstract and uncertain to warrant" the issuance of declaratory relief. Id. at 183. The First Circuit vacated the summary judgment, concluding that the trial court had mischaracterized Verizon's request for relief, "which went to the four alleged violations and sought a declaration as to their legal effects." Id. at 189. Verizon had not "rest[ed] its request for declaratory relief on the premise that work stoppages and Union communications about company tools would continue to occur in the future as they had in the past." Id. The Court concluded the dispute was ripe and that an adjudication would benefit the parties in understanding their obligations under the CBA and settling their underlying controversy. Id. at 189-90.

The First Circuit also set aside a decision denying review on ripeness grounds in Narragansett Indian Tribe, 19 F.3d 688. In that case, an Indian Tribe and a state sought cross-declarations regarding the state's civil jurisdiction over the Tribe's settlement lands under a

federal statute after the Tribe commenced negotiations to allow the construction of a casino on the settlement lands. Id. at 690-91. The trial court concluded that the parties' dispute was unripe because the need for clarification as to the state's jurisdiction over the lands would only arise at the end of the parties' negotiations. Id. at 693. The First Circuit disagreed, concluding that the parties' dispute was fit for review because the interpretation of the statute was a question of law that would not be altered by further factual development, and because it was "of critical importance to the negotiation process in which the parties" were engaged. Id. at 693-94.

By contrast, in Ernst & Young, the First Circuit concluded that a challenge to a state contribution statute was not ripe when the petitioner alleged that the statute had increased its pressure to settle and frustrated its ability to determine exposure in a pending case. 45 F.3d at 539. The Court rejected these allegations of hardship because an adjudication would leave the petitioner facing litigation and the settlement table, where many factors would remain in play regardless of the statute's validity. Id. at 539-40. The Court reasoned that although a declaratory decree would have given the parties another piece of information in settlement discussions, lessening uncertainty to a degree, the settlement value of the case would have remained a subjective, moving target. Id. at 540.

This case is closer to Verizon New England and Narragansett Indian Tribe than it is to Ernst & Young. In an effort to persuade the Court to the contrary, the U.S. Trustee contends that Resurgent cannot meet the hardship requirement of the ripeness test because Resurgent has already changed the practice for which it now seeks a declaration of non-liability. The U.S. Trustee also argues that Resurgent cannot make a showing of hardship because the only injury that Resurgent will suffer in the absence of review is the apprehension of future litigation, and

the only utility of review at this juncture is early notice as to the propriety of Resurgent's past practices. Resurgent responds that the USTP's actions in the Missouri cases have rendered Resurgent's fear of litigation over the propriety of its conduct here a reality, presenting a dilemma that a decision here would resolve.

The Court agrees that the USTP's affirmative actions in the Missouri cases have altered the posture of this case with respect to the maturity of the parties' dispute over Resurgent's practices. Due to the U.S. Trustee's demands, its commencement of litigation in the Missouri cases, and the apparent breadth of the relief sought in those cases, this case now has the requisite adversity, immediacy, and reality. *See* Blanchette, 419 U.S. at 140 ("[S]ince ripeness is peculiarly a question of timing, it is the situation now . . . that must govern.").

The possibility that the Missouri cases may yield a decision concerning the propriety of Resurgent's filing practices does not make this case unripe. Resurgent has asked this Court for a declaration regarding its proof of claim in the Cushmans' case. Like the complaint at issue in Verizon New England, Resurgent's complaint seeks a declaration of the legal effects of conduct that has already occurred. If this Court issues relief, the parties will have the benefit of a declaration concerning this Court's interpretation of its own filing procedures and its analysis under Rule 9011 or section 105, which will help them to understand their obligations under those procedures and rules. The parties' dispute as to the propriety of Resurgent's claim in the Cushmans' case will be resolved. Although the issuance of a declaratory judgment in this proceeding will not resolve all of the disputes between the parties, a judgment may help the parties get back to the negotiating table. The very nature of the USTP's allegations against

Resurgent—which challenge Resurgent's proof-of-claim practices in bankruptcy courts across the country—makes negotiation a far superior alternative to litigation.

Resurgent has demonstrated that withholding a determination in this case will cause a hardship, at least as the Court understands the Abbott Laboratories test and the First Circuit's interpretation and application of that test.  Perhaps the showing is not the strongest.  But the First Circuit has recognized the possibility that the "fitness" prong and "hardship" prong may be measured on a type of sliding scale.  *See* Ernst & Young, 45 F.3d at 535.  A particularly strong showing on one prong may overcome a relatively weak showing, but a showing nonetheless, on the other prong.  *See* id.  Resurgent's complaint for a declaratory judgment reveals enough on both prongs to cross the ripeness hurdle.

### B.  Should the Court Abstain from Exercising Jurisdiction?

Declaratory relief is discretionary, El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992), and the First Circuit has addressed abstention under the Declaratory Judgment Act several times, *see, e.g.*, Hartford Fire Ins. Co. v. R.I. Pub. Transit Auth., 233 F.3d 127 (1st Cir. 2000); DeNovellis v. Shalala, 124 F.3d 298 (1st Cir. 1997).  The First Circuit has recognized that the federal courts' obligation to adjudicate claims that satisfy jurisdictional requirements "yields to considerations of practicality and wise judicial administration" when those claims arise in the declaratory judgment context.  DeNovellis, 124 F.3d at 313 (quotation marks omitted).

The propriety of declaratory relief depends upon the court's "circumspect sense" of the fitness of the case for judicial resolution, informed by "teaching and experience concerning the functions and extent of federal judicial power."  Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quotation marks omitted).  In exercising its discretion to grant (or refuse to grant)

- 15 -

declaratory relief, a court must consider the totality of the circumstances and give due weight to appropriate prudential considerations. El Dia, 963 F.2d at 494. The circumstances that factor into the court's discretion will vary from case to case, but generally include the benefit that may be afforded by the requested relief and the waste of judicial resources that may be engendered if the parties are pursuing multifarious suits. *See* Am. Home Assurance Co. v. Insular Underwriters Corp., 494 F.2d 317, 320 (1st Cir. 1974). When evaluating the benefit of a declaratory remedy where the parties are entertaining multiple suits, the question is whether, the other pending proceedings can afford such a remedy as to render declaratory relief in this action purposeless. *See* id.

The U.S. Trustee contends that discretionary dismissal is appropriate here because (a) Resurgent has no compelling need for relief in this case, (b) the USTP's actions in the Missouri cases "will allow litigation of a much broader range of Resurgent's conduct," and (c) granting relief will discourage creditors from settling with the USTP in future and encourage litigation.

The Court is not convinced that abstention is appropriate. The U.S. Trustee correctly asserts that ripeness is a factor to be evaluated when considering a request for abstention under the Declaratory Judgment Act. *See* El Dia, 963 F.2d at 495. But the Court has already concluded that this matter is ripe. Further, the most salient policies underlying the ripeness doctrine are not implicated in this proceeding. There are no constitutional questions, there are no undeveloped facts, and there is no risk of prematurely usurping another tribunal or administrative agency. In some cases, federal courts must consider abstaining from issuing declaratory judgment involving issues of state law when there is a parallel state court proceeding that may present opportunity for adjudication of the same issues. *See, e.g.,* Wilton, 515 U.S. at 290;

Standard Fire Ins. Co. v. Gordon, 376 F. Supp. 2d 218, 224-25 (D. R.I. 2005). Here, the issues do not involve state law and there are no state proceedings.

The Court also rejects the U.S. Trustee's attempt to characterize Resurgent as having engaged in some unseemly forum shopping. In the U.S. Trustee's view, Resurgent has "unfairly manipulate[d]" the declaratory judgment remedy by filing this action in this case, where only one issue (*i.e.*, the "robo-signing" of proofs of claim) is implicated and where the facts may be advantageous to Resurgent on that issue. Apparently, the U.S. Trustee believes that Resurgent should have continued negotiating before filing suit, or waited for the U.S. Trustee to commence an action elsewhere. There is nothing wrong or untoward about Resurgent seeking a declaratory judgment here in this case when the USTP has leveled accusations against Resurgent regarding the proof-of-claim practices that Resurgent used in this case. The existence of this adversary proceeding does not prevent the USTP from prosecuting its adversary proceedings against Resurgent in the Missouri cases, or even from bringing additional actions against Resurgent elsewhere if the USTP determines that doing so would be useful. Likewise, the commencement of this adversary proceeding does not prevent the USTP from continuing to negotiate with Resurgent to reach an agreement that promotes fair and efficient claim filing practices and addresses the USTP's concerns in a cost-efficient manner.

The nationwide scope of Resurgent's practices and the USTP's challenges – which must be viewed in the context of local filing rules and the relevant, discretionary sources of sanctioning authority in the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code – exists in stark tension with the U.S. Trustee's purported object of tasking a single bankruptcy court with deciding whether Resurgent should be sanctioned. The issue of whether Resurgent is

subject to sanctions in the Cushmans' case is a function of this Court's discretionary determination of whether sanctions are warranted (and if so, to what extent).

Many of the U.S. Trustee's arguments in favor of abstention flow from a single incorrect assumption: that the parties' dispute exists entirely within the four concerns of the adversary proceedings that the USTP filed in the Missouri cases, and that Missouri Bankruptcy Court should be the only court to adjudicate the dispute. But, as Resurgent has argued in its Opposition to the U.S. Trustee's Motion to Dismiss, "[t]he controversy giving rise to this suit is whether Resurgent's use of Ms. Gaines's signature and ECF credentials *in this case* is sanctionable, and a declaration to that effect will terminate the controversy." The limited nature of the relief sought by Resurgent in this case and the likelihood that, following resolution of this case, other disputes between the parties may remain extant does not necessarily mean that the Court should abstain from issuing a declaratory judgment. *See* 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2579 (4th ed.) (collecting cases).

The U.S. Trustee also suggests that failure to dismiss this proceeding may have dire consequences for the USTP's ability to discuss problems and negotiate solutions with other creditors in the future. These creditors, the U.S. Trustee fears, will rush to seek declaratory judgments whenever the USTP raises an issue in negotiations. The Court is sympathetic to this point to an extent. However, Resurgent may not have initiated its requests for declaratory relief if the USTP had not demanded a significant sum of money and threatened litigation regarding the challenged conduct. If the future, in fact, manifests a flood of declaratory judgment actions by creditors against the USTP, then bankruptcy courts may then look to the tools available to stem that tide.

In this case, however, considerations of practicality and wise judicial administration do not warrant an abdication of the Court's "'virtually unflagging'" duty to exercise the jurisdiction conferred by Congress through the Declaratory Judgment Act.  *See* <u>Susan B. Anthony List v. Driehaus</u>, 134 S. Ct. 2334, 2347 (2014) (quoting <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377, 1386 (2014)).

### III.    CONCLUSION

Resurgent has met its burden of establishing subject matter jurisdiction over this adversary proceeding, and this Court will not exercise its discretion to dismiss this action.  The motion to dismiss will be denied by a separate order.

Dated:  March 1, 2017

Michael A. Fagone
United States Bankruptcy Judge
District of Maine