**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>Laurence Cushman<br>and Carlene Cushman,<br><br>Debtors | Chapter 13<br>Case No. 14-10692 |
| Resurgent Capital Services, L.P.,<br><br>Plaintiff<br>v.<br><br>William K. Harrington,<br>United States Trustee for Region 1,<br><br>Defendant | Adv. Proc. No. 16-1017 |
| William K. Harrington,<br>United States Trustee for Region 1,<br><br>Counterclaimant<br>and Third-Party Plaintiff<br>v.<br><br>Resurgent Capital Services, L.P.,<br><br>Counterclaim Defendant<br>and<br><br>LVNV Funding, LLC,<br><br>Third-Party Defendant | |

## <u>MEMORANDUM OF DECISION</u>

Resurgent Capital Services, L.P. and the United States Trustee have locked horns in a pitched battle over Resurgent's claim filing practices in bankruptcy cases across the country.  In this adversary proceeding, the United States Trustee takes particular aim at Resurgent's practice of affixing an employee's signature to a proof of claim and then filing the proof of claim, all without

1

prior review of the proof of claim by that employee.  By the United States Trustee's lights, this

practice justifies the imposition of sanctions under Fed. R. Bankr. P. 9011 and otherwise.  Resurgent

concedes that this practice—which has since been discontinued—was not a best practice.  It

maintains, however, that the practice did not violate the Bankruptcy Code or the Federal Rules of

Bankruptcy Procedure and does not warrant the imposition of sanctions.

 While aspects of Resurgent's practices could—and should—have been designed to produce

more accurate proofs of claim, its practices were not so egregiously deficient to warrant the

imposition of sanctions.  On this summary judgment record, the Court is unwilling to declare that

Resurgent should be sanctioned for the proof of claim it filed in the Cushmans' chapter 13 case.

## I.   The Summary Judgment Record

### A. The Pleadings and Summary Judgment Motions

 Resurgent commenced this adversary proceeding against William K. Harrington, United

States Trustee for Region 1 (the "UST"), by filing a complaint for declaratory relief under 28

U.S.C. § 2201.  Specifically, Resurgent requests a declaratory judgment that (a) it is neither

necessary nor appropriate to impose sanctions under Rule 9011, 11 U.S.C. § 105, or any other

source of authority on account of the proof of claim filed by Resurgent in the Cushmans' chapter

13 case (the "Cushman POC"); and (b) to the extent that the amounts sought in the Cushman

POC are factually accurate, Resurgent need not amend that proof of claim.[1]

 The UST answered Resurgent's complaint, asserted a counterclaim, and filed a third-

party complaint against Resurgent's affiliate, LVNV Funding, LLC.  Through the counterclaim

and third-party complaint, the UST asks the Court to use Rule 9011, section 105(a), or its

---

[1] When used in this memorandum, the term "Rule" refers to a Federal Rule of Bankruptcy Procedure and the term "Civil Rule" refers to a Federal Rule of Civil Procedure.  Unless otherwise indicated, statutory citations refer to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 et seq.

inherent authority, to (a) impose monetary sanctions against Resurgent and LVNV; (b) suspend

Resurgent's CM/ECF privileges and impose a monitoring requirement on Resurgent's proof of

claim filing in this District for one year; (c) strike the Cushman POC; and (d) enjoin Resurgent

and LVNV from filing "Robo-signed" proofs of claim in this District.

After a pretrial conference, the Court issued an order making D. Me. Civ. R. 56(h)

applicable to this proceeding. The parties then sought leave to file cross-motions for summary

judgment and proposed a briefing schedule. The Court granted the parties' request and adopted

their schedule. Resurgent and the UST then filed cross-motions for summary judgment on

Resurgent's complaint. Although the cross-motions do not address the UST's counterclaim or

his third-party complaint, the summary judgment record contains a significant amount of

evidence that bears on the extent of an appropriate sanction in addition to the initial question of

whether there is any basis for imposing sanctions.

## B.     The Source of the Facts

The evaluation of a summary judgment record is governed by D. Me. Civ. R. 56, which

defines the evidence the Court may consider in determining whether genuine issues of material

fact exist. *See* D. Me. LBR 7056-1 (making most of D. Me. Civ. R. 56 applicable in adversary

proceedings); Doe v. Solvay Pharms., Inc., 350 F. Supp. 2d 257, 259-60 (D. Me. 2004) ("The

evidence the Court may consider in deciding . . . a summary judgment motion is circumscribed

by the Local Rules of this District."). A party seeking summary judgment must file a statement

of material facts as to which it contends there is no genuine dispute. D. Me. Civ. R. 56(b). Each

fact included in that statement must be separately set forth in a numbered paragraph and

supported by a specific record citation. D. Me. Civ. R. 56(b), (f). A party opposing a motion for

summary judgment is required to submit an opposing statement of material facts that admits,

3

denies, or qualifies the moving party's factual assertions, and supports each denial or

qualification with a specific record citation.  D. Me. Civ. R. 56(c).  The opposing statement may

also include additional facts supported by specific record citations.  D. Me. Civ. R. 56(c), (f).  A

party replying to an opposition to a motion for summary judgment must submit a reply statement

of material facts that admits, denies, or qualifies the additional facts submitted by the opposing

party, and supports each denial or qualification with a specific record citation.  D. Me. Civ. R.

56(d), (f).  The parties' stipulations of fact control over any conflicting statements of fact.  D.

Me. Civ. R. 56(b).  If a statement of fact is supported by a proper citation, the fact is deemed

admitted unless it is properly controverted.  D. Me. Civ. R. 56(f); *see also* Fed. R. Civ. P.

56(e)(2).

The summary judgment record in this proceeding consists of several components.  First,

the parties filed a stipulation of facts containing 106 paragraphs ("Stip.").  Second, the Court

considered the allegations in the complaint that were admitted by the UST.  Next, the Court took

judicial notice of certain facts reflected on the docket in the Cushmans' chapter 13 case.  Finally,

the Court considered the statements of fact submitted by the parties under D. Me. Civ. R. 56.

Resurgent submitted 84 statements of material fact ("SMF").  The UST admitted 32 of these

facts, denied 15, and qualified his response to the remaining 37; he also submitted 93

counterstatements of material fact ("CSMF").  Resurgent admitted 51 of these facts, denied 9,

and qualified its response to the other 33.

Before recounting the facts, some explanation of the Court's approach to the summary

judgment record is warranted.  Many of the facts—including all of the genuinely disputed facts

and many of the undisputed facts—have been omitted from the recitation below because they are

not material.[2]  Conversely, certain undisputed facts have been included, not necessarily because

each of them standing alone is material, but because collectively they provide context for

evaluating Resurgent's conduct.

Finally, the Court expended significant efforts evaluating the facts that were qualified

under D. Me. Civ. R. 56(c) and (d).  The Court considered whether a qualification disputed the

evidentiary support for the corresponding statement or, instead, merely challenged the

statement's significance.  If a qualification merely challenged the significance of the

corresponding statement, the Court disregarded the qualification and deemed the statement to

have been admitted.  *See* Fed. R. Civ. P. 56(e)(2); Solvay Pharms., Inc., 350 F. Supp. 2d at 273

n.11.  If a well-supported qualification admitted a statement in part and denied the statement in

part, then the Court treated the statement as admitted in part and denied in part.

## II.    The Facts

### A.    The Cushmans' Chapter 13 Case

Laurence and Carlene Cushman started their chapter 13 case in August 2014.  They

scheduled Credit One Bank as the holder of a general unsecured claim in the amount of $540.00

arising out of Mrs. Cushman's credit card account ending in 0642.  Shortly after the chapter 13

filing, Resurgent filed the proof of claim at the nucleus of this dispute.  There were no objections

to the claim, and it was expressly allowed.  The Cushmans' plan was confirmed, and the chapter

13 trustee made a 100% distribution to the holders of allowed unsecured claims, including a

distribution of $575.49 to Resurgent.  In December 2017, the Cushmans received a discharge.

---

[2] The omission of any properly supported fact from the recitation of the facts should not be equated with the
Court's failure to consider that fact in its analysis.

B.      **The Cushman POC**

Resurgent filed the Cushman POC on behalf of LVNV, Stip. ¶ 3, using the CM/ECF

credentials assigned to Resurgent, SMF ¶ 51.  The Cushman POC identified LVNV as the

creditor and indicated that notices should be sent to Resurgent.  It listed $575.49 as the amount

of the claim and indicated that the claim arose out of a credit card.  The proof of claim stated that

LVNV identified the debtor with an account number ending in 0642, and that the debtor may

have scheduled the account as held by Credit One Bank, N.A.

The account detail attached to the Cushman POC included Ms. Cushman's name,

address, and redacted social security number; the name of the trustee when the proof of claim

was filed; and the case number and chapter.  The account detail identified the "Current Creditor"

as "LVNV Funding, LLC its successors and assigns as assignee of FNBM, LLC"; indicated that

LVNV purchased the debt from FNBM; and identified Credit One Bank, N.A. as an alternative

name for the creditor and as the creditor at the time of the last transaction.  The account detail

provided the last four digits of the account number associated with the claim (0642); indicated

that the debt was charged off on September 8, 2014; and stated that the last payment date and last

transaction date were April 13, 2014.  In addition, the account detail listed a balance of $575.49

as of the petition date, consisting entirely of principal with no interest or fees.  This information

about the balance and character of the debt was flagged with asterisks and a notation that the

information "was obtained from the data files received from the assignor and other information

such as Bankruptcy Court records."

Resurgent acquired information about the debt underlying the Cushman POC through the

data string in the sale file that it received when it agreed to service the debt.  SMF ¶¶ 4, 57, 60.

Resurgent typically relies on the information provided in such files, and it did so here.  SMF ¶

6

58.  The data string and the related credit card billing statements showed a principal balance of

$396.46, CSMF ¶ 82, described the debt as being composed partly of interest, SMF ¶¶ 59-60,

and detailed a total prepetition debt that matches the $575.49 on the proof of claim, SMF ¶¶ 59,

63. The data string reported a last payment date of April 13, 2014, but did not report a last

transaction date.[3]  The billing statements showed that the last payment was made on April 12,

2014, and that the last transaction took place on May 22, 2014.  Stip. ¶¶ 61-62.

When the Cushman POC was filed in 2014, SMF ¶ 3, the applicable form was Official

Form 10, SMF ¶ 42.  Part 8 of that form, entitled "Signature," instructed the person signing the

form to identify as the creditor, the creditor's authorized agent, or someone else.  Official Form

10 included the following attestation above the signature line: "I declare under penalty of perjury

that the information provided in this claim is true and correct to the best of my knowledge,

information, and reasonable belief."  Next to the signature line, Official Form 10 provided a

space for the signer's printed name, title, and company.

Like many other Official Forms, Official Form 10 provided instructions to the user.  The

instructions did not purport to follow the law with exactitude; instead, they were "general

explanations of the law."  Instruction No. 8, relating to the date and signature, provided:

> The individual completing this proof of claim must sign and date it.  FRBP 9011.
> If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish
> local rules specifying what constitutes a signature.  If you sign this form, you
> declare under penalty of perjury that the information provided is true and correct
> to the best of your knowledge, information, and reasonable belief.  Your signature
> is also a certification that the claim meets the requirements of FRBP 9011(b).
> Whether the claim is filed electronically or in person, if your name is on the
> signature line, you are responsible for the declaration.  Print the name and title, if
> any, of the creditor or other person authorized to file this claim.  State the filer's
> address and telephone number if it differs from the address given on the top of the

---

[3]  Although this statement is not included in the parties' statements of material fact, it is supported by the copies
of the data string included in the appendices.  The Court is not obliged to consider salient facts that are not isolated
by the parties, D. Me. Civ. R. 56(f), but will nevertheless consider the contents of the data string upon which both
parties rely extensively.

form for purposes of receiving notices.  If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent.  If the authorized agent is a servicer, identify the corporate servicer as the company.  Criminal penalties apply for making a false statement on a proof of claim.

The Cushman POC was prepared on Official Form 10, CSMF ¶ 86, and bears the signature of Susan Gaines, Stip. ¶ 53.  Above Ms. Gaines's signature, a box is checked indicating, "I am the creditor's authorized agent."  Above Ms. Gaines's signature, the Cushman POC states, "I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief."  CSMF ¶ 75.  Next to her signature, Ms. Gaines's name appears in print along with her title (Claims Processor) and company name (Resurgent Capital Services).

When the Cushman POC was filed, Ms. Gaines had no knowledge, information, or belief about any debts owed by the Cushmans, including any debts that they may have owed to Resurgent or LVNV.  CSMF ¶¶ 21-22.  Ms. Gaines did not review the Cushman POC before it was filed.  Stip. ¶ 54.  Instead, the information included in the proof of claim was reviewed and approved by Nancy Gosnell, Stip. ¶ 55, a contract management supervisor in Resurgent's bankruptcy department, Stip. ¶ 57.

## C.    Resurgent's Claim Preparation and Filing Practices

Resurgent services consumer debt portfolios for affiliated companies like LVNV, Stip. ¶¶ 1-2, and it regularly files proofs of claim in bankruptcy cases, Stip. ¶ 8.  In so doing, Resurgent relies on data provided by others.  Stip. ¶ 13.  When LVNV acquires an account that Resurgent will service, the sale file from that purchase is loaded into Resurgent's Account Master Computer System ("AMCS").  Stip. ¶¶ 10-11.  The sale file contains a string of data about the underlying debt, Stip. ¶ 12, such as the debtor's name, address, account number, social security

number, debt origination date, last payment amount and date, charge-off balance and date, filing

date balance, principal balance, and fee and interest balance, CSMF ¶ 28.  The data string does

not include a field for the date of the last transaction.

Resurgent takes several measures to ensure the quality of the data it receives and utilizes.

SMF ¶ 6.  Resurgent and its affiliates ordinarily secure representations and warranties for the

material accuracy of the data related to debts that will be purchased or serviced, and one of

Resurgent's affiliates received representations and warranties related to the debt underlying the

Cushman POC.  *See* SMF ¶¶ 7-8.[4]  Resurgent's quality control team also analyzes the data it

receives for common discrepancies and missing information.  SMF ¶ 9.  When Resurgent

receives a sale file, sometimes it also receives other documents related to a debt, such as billing

statements.  SMF ¶ 4.  When Resurgent does not receive such documents at the time of purchase,

it may later request them from the seller.  SMF ¶ 5.[5]

---

[4]  As support for these statements, Resurgent cites a declaration of Bruce Jobe.  The UST asks the Court to strike the statements because (a) Mr. Jobe's testimony is excludable under Fed. R. Evid. 1002; (b) Mr. Jobe's testimony does not meet the requirements of Fed. R. Evid. 1006; and (c) Resurgent did not produce in discovery the agreement under which LVNV acquired the debt described in the Cushman POC.  Fed. R. Evid. 1002 is inapplicable to Mr. Jobe's testimony, even though the testimony describes, at some level, the contents of written agreements.  *See, e.g.,* Miner v. Sharp Ford-Mercury, Inc. (In re United Tractors, Inc.), 13 B.R. 239, 244 n.11 (Bankr. W.D. Mo. 1981) (explaining that Fed. R. Evid. 1002 "is not applicable when a witness testifies from personal knowledge of a matter, even though the same information is contained in a writing") (quotation marks omitted).  Fed. R. Evid. 1006 authorizes the use of summaries to prove the content of voluminous writings.  It does not, however, preclude a witness with personal knowledge from testifying about a party's business practices relating to writings generally.  Finally, even if the Court were to grant the UST's requests to strike these statements based on the claimed evidentiary deficiencies of Mr. Jobe's declaration, the statements are adequately supported by the declaration of Jon Mazzoli, Director of Deal Management at Resurgent's affiliate, Sherman Capital Markets, LLC.  The UST has not challenged Mr. Mazzoli's declaration, and the statements in that declaration establish that Resurgent and its affiliates routinely secure contractual representations and warranties regarding the validity of purchased accounts and receivables and the material accuracy of the information related to those accounts and receivables.  In fact, Resurgent has produced the agreement transferring the receivables underlying the Cushman POC, an agreement containing representations and warranties as to the validity of the debt.  For these reasons, the UST's requests to strike are denied.

[5]  The UST asks the Court to strike this statement on the grounds that the statement is immaterial and lacks record support because (a) the declaration of Bruce Jobe, offered in support of the statement, is excludable under Fed. R. Evid. 1002 and 1006; and (b) Resurgent has failed to produce the purchase agreement for the Cushman debt.  For the reasons described in the previous footnote, the Court rejects the UST's contention that this statement lacks record support.  The Court also declines to strike this statement as immaterial.

Resurgent's procedure to confirm that an unsecured proof of claim may be properly filed includes multiple steps.  SMF ¶ 3.  In the first step, referred to by Resurgent as the "match" step, Resurgent confirms that the obligor has filed for bankruptcy.  Stip. ¶ 14; SMF ¶ 3.  Resurgent's second step, dubbed the "research" step, involves confirming that the debt has not been previously discharged.  Stip. ¶ 14; SMF ¶ 3.  Finally, in the "review" step, Resurgent prepares, reviews, and files a proof of claim.  SMF ¶¶ 3, 11.

In the "match" step, Resurgent matches accounts that it services with new bankruptcy filings through a system known as Bankruptcy Notifications or "BKN."  Stip. ¶ 80.  Where BKN can determine with a high degree of reliability that a new bankruptcy filing matches an account serviced by Resurgent, the account moves automatically to the next step.  Stip. ¶ 83.  Where BKN cannot determine whether a new bankruptcy filing matches a Resurgent account, a Resurgent employee manually reviews the account information and the bankruptcy information.  Stip. ¶ 84.  When a match is established, the account is updated in AMCS to show that a bankruptcy case is pending, information about the account is loaded into Resurgent's bankruptcy servicing system ("BKS"), and the account moves on to the "research" step.  Stip. ¶¶ 84-85.

The "research" step is designed to ensure that the debt was not discharged in a prior bankruptcy case.  Stip. ¶ 86.  When the debtor is a first-time filer or the debtor's prior bankruptcy cases were dismissed, the account moves automatically to the next step.  Stip. ¶ 88.  Otherwise, a Resurgent employee reviews the debtor's prior bankruptcy cases to determine whether the debt was discharged.  Stip. ¶ 89.

After completing the first two steps, in appropriate circumstances (*i.e.*, a matched debt and no prior discharge of the debt), Resurgent moves to the last step, the "review" step.  SMF ¶ 11.  At that point, BKS automatically generates and populates a proof of claim form with the

account information maintained in BKS, which is derived from AMCS and ultimately from the sale file provided by the account seller or owner. Stip. ¶¶ 15-16. The review conducted by Resurgent's claims processors is performed using the BKS platform. Stip. ¶ 17. BKS was originally designed so that claims processors did not ordinarily review the populated proof of claim form, but instead reviewed the data on the BKS screen that was used to populate the form. CSMF ¶ 25; Stip. ¶ 23. On the BKS screen, claims processors view four columns of information: (1) account information previously obtained by BKS from AMCS, which was used to populate the proof of claim; (2) up-to-date account information obtained by BKS from AMCS; (3) information about the filer and the bankruptcy case pulled from the court docket; and (4) co-filer information pulled from the court docket. Stip. ¶ 18. The BKS system highlights any information that does not match across the columns on the screen. Stip. ¶ 19. Some of the columns do not appear unless the BKS system highlights a discrepancy. CSMF ¶ 29.

Resurgent's work instructions direct claims processors to approve a proof of claim in the absence of a highlighted discrepancy, though claims processors may have some discretion to do otherwise. SMF ¶ 13; CSMF ¶ 30. Claims processors generally do not review the underlying documents related to a debt or otherwise verify the data pulled from BKS and AMCS. Stip. ¶ 24. In general, they do not review debtors' schedules, billing statements, or other information external to Resurgent's systems. CSMF ¶ 27. It typically takes less than 30 seconds for a claims processor to review a proof of claim. Stip. ¶ 22. In the absence of a highlighted discrepancy, a claims processor may review and approve a claim expeditiously; it is not unusual to do so in as little as 10 seconds. Stip. ¶ 20. If BKS highlights a discrepancy, the proof of claim may still be approved if the claims processor can apply Resurgent's work instructions to resolve the discrepancy. Stip. ¶ 21.

11

When a claims processor approves a proof of claim, the proof of claim is filed, where possible, with a tool called "autopost," which automatically posts proofs of claim to claims registers using CM/ECF credentials. Stip. ¶¶ 26-27. In jurisdictions that do not permit automatic posting, the claims processor files the proof of claim manually through the CM/ECF system. Stip. ¶ 28. If the claims processor does not approve a proof of claim, the claims processor selects a basis for the rejection and the proof of claim goes into the rejection queue. Stip. ¶¶ 29-30.

Resurgent's quality control group conducts periodic audits of its proof-of-claim filing processes. Stip. ¶¶ 91, 93. In 2014, the quality control group reported that Resurgent maintained a 99.81% score in its unsecured claims filing process based on the criteria sampled. Stip. ¶ 98. The audit process compares the information on the proof of claim form with the information in the BKS system and does not involve review of documents extrinsic to the BKS system. Stip. ¶ 99. Other than identifying the correct account owner, none of the criteria sampled related to the substantive accuracy of a proof of claim. CSMF ¶ 88. When the quality control group identifies a mistake in a proof of claim, the mistake is discussed with the claims processor who reviewed and approved the proof of claim. Stip. ¶ 96.

Resurgent also has a proof of claim objection team that reviews each objection to a Resurgent proof of claim, and either handles the objection internally or retains counsel to respond. SMF ¶ 17. Less than four percent of the proofs of claim that Resurgent filed in 2013 and 2014 were subject to filed objections. SMF ¶ 16.

Resurgent has always used a fully manual process to prepare secured proofs of claim. Stip. ¶ 102. Resurgent's policy and practice has been that all proofs of claim for secured debt must be signed by the person who prepared or reviewed the proof of claim or the information

contained in it.  Stip. ¶ 101.  Each of Resurgent's secured proofs of claim is therefore manually

completed by an individual reviewer who gathers the necessary supporting documentation before

personally signing and filing the proof of claim.  Stip. ¶ 103.

## D.    Susan Gaines's Signature

In 2011, Resurgent began using Ms. Gaines's signature on all of its unsecured proofs of

claim.  Stip. ¶ 49.  At that time, Ms. Gaines gave Resurgent a digital copy of her signature and

authorized Resurgent to use it on all unsecured proofs of claim, including proofs of claim that

she would not personally review.  Stip. ¶ 51.  From 2011 to April 2015, Resurgent's practice was

to automatically affix Ms. Gaines's signature to all unsecured proofs of claim upon generation,

regardless of whether Ms. Gaines reviewed the proof of claim or the information in it.  Stip. ¶¶

35-36, 49.  During this period, claims processors did not have the ability to change the signature

from Ms. Gaines's to their own, Stip. ¶ 37, even though the BKS system could have been

designed to allow that.  CSMF ¶ 2.

In the District of Maine, between December 21, 2011 and September 25, 2013, Resurgent

filed at least 149 proofs of claim bearing Ms. Gaines's signature that Resurgent is unable to

demonstrate that Ms. Gaines reviewed.  Stip. ¶ 48.  In 2013, Resurgent filed 158,763 unsecured

proofs of claim in bankruptcy courts across the country.  Stip. ¶ 45.  Ms. Gaines reviewed 67,216

of those proofs of claim, but Resurgent cannot demonstrate that Ms. Gaines reviewed any of the

remaining 91,547.  Stip. ¶ 45.  In 2014, Resurgent filed 151,716 unsecured proofs of claim.  Stip.

¶ 46.  That year, Ms. Gaines reviewed 97,344 of the unsecured proofs of claim that Resurgent

filed, while the remaining 54,372 were reviewed by another claims processor but bore Ms.

Gaines's signature.  Stip. ¶ 46.

13

David Richard, a vice president in Resurgent's bankruptcy department, and Lisa

Landreth, Resurgent's manager of contract management, authorized and were aware of

Resurgent's practice of putting Ms. Gaines's signature on all unsecured proofs of claim.  Stip. ¶

38.  They were unsure who had first decided to use Ms. Gaines's signature in that way and they

did not know why that decision had been made.  CSMF ¶ 5.  Mr. Richard headed Resurgent's

bankruptcy department between 2012 and November 2014.  SMF ¶ 39.  During that time, he

received no training on Rule 9011 as it related to filing proofs of claim, and he may not have

been aware of that rule.  CSMF ¶ 3.  At some point, Mr. Richard reviewed the proof of claim

form and considered the propriety of Resurgent's practice of affixing Ms. Gaines's signature to

all unsecured proofs of claim.  SMF ¶¶ 40-41.  Mr. Richard believes that he consulted with

Resurgent's legal group about that practice, but it is not clear when that consultation might have

occurred.  CSMF ¶ 92.

**E.     Ms. Gaines's Confidence in Resurgent's Systems**

Ms. Gaines has been a claims processor at Resurgent since 2004.  Stip. ¶ 40.  In 2014, her

duties included reviewing and filing unsecured proofs of claim.  Stip. ¶ 42.  When reviewing

proofs of claim, Ms. Gaines looked for discrepancies highlighted by the BKS system.  CSMF ¶

32.  She did not engage in a manual review to determine whether the BKS system had missed

something, and she did not look for anything other than highlighted discrepancies on the BKS

screen.  CSMF ¶ 32.  If the BKS system highlighted a discrepancy, Ms. Gaines could either

resolve the discrepancy or refer it to the research team or to her supervisor.  CSMF ¶ 32.  Ms.

Gaines never rejected a claim unless the BKS system highlighted a discrepancy.  CSMF ¶ 31.  At

the time that the Cushman POC was filed, she looked at the proof of claim form approximately

one time out of every thousand claims.  CSMF ¶ 26.

14

In 2014, Ms. Gaines was Resurgent's only full-time claims processor, but Resurgent had

nine other employees who worked as claims processors on a part-time basis.  Stip. ¶ 41; CSMF ¶

33.  Ms. Gaines had no supervisory authority over other claims processors, Stip. ¶ 43, but she

was the primary trainer for every other Resurgent employee who reviewed, approved, or filed

unsecured proofs of claim, SMF ¶ 23.  Ms. Gaines was responsible for training claims processors

to follow Resurgent's work instructions.  SMF ¶ 25.  When claims processors were new to the

system, they received one-on-one training from Ms. Gaines and were given a copy of the work

instructions.  SMF ¶ 24; CSMF ¶ 34.  Those work instructions did not include any information

about the penalties for perjury, the instructions on the proof of claim form, Rule 9011, or the fact

that the BKS system put Ms. Gaines's signature on every unsecured proof of claim.  CSMF ¶ 39.

The work instructions were technical documents that told claims processors: how to pull up the

BKS screen; to refer real estate claims to the secured bankruptcy department; how to comply

with Resurgent's guidelines for filing time-barred debt; not to file proofs of claim in a certain

jurisdiction unless the last payment date, the charge-off date, and the origination date were

included; to approve a proof of claim in the absence of a highlighted discrepancy; and to include

statements and chain of ownership in certain jurisdictions.  CSMF ¶ 39.

 Ms. Gosnell received training from Ms. Gaines on how to review and approve unsecured

proofs of claim before she reviewed and approved the Cushman POC.  SMF ¶ 53.  She generally

followed Resurgent's work instructions when determining whether to approve proofs of claim.

SMF ¶ 54.  She understood that a person signing a proof of claim had to believe that the

information contained in the proof of claim was accurate.  SMF ¶ 55.  But, she was not sure

whether the signature on the proof of claim form was made under penalty of perjury, had never

read the instructions on the form "word for word," and was unaware of the existence of Rule

9011.  CSMF ¶¶ 41-43.  In 2014, Ms. Gosnell did not look at the actual proof of claim form or

review billing statements before approving a proof of claim.  CSMF ¶ 46.  At that time, claims

processors rarely reviewed the populated proof of claim form when reviewing a proof of claim.

Stip. ¶ 23.  Instead, they reviewed the columns shown on the BKS screen, which reflected,

among other information, the data used to populate the proof of claim form.  Stip. ¶ 23.

Although Ms. Gaines was familiar with the instructions on the proof of claim form, SMF

¶ 19, she did not provide any information to claims processors about those instructions, CSMF ¶

37.  She only "ask[ed] that they review the proof of claim form and let [her] know if they had

any questions."  CSMF ¶ 37.  When she was deposed by the UST, Ms. Gaines did not know who

at Resurgent was responsible for ensuring compliance with legal requirements for filing proofs

of claim, and she did not remember asking anyone about legal compliance during the last several

years.  CSMF ¶ 13.  As of July 2017, Ms. Gaines had never read or seen a copy of Rule 9011.

CSMF ¶ 14.  She did not know, even approximately, how many claims were reviewed by others

and then filed using her signature under penalty of perjury.  CSMF ¶ 17.

Ms. Gaines was not an expert in many of Resurgent's processes.  CSMF ¶ 24.  She did

not know whether Resurgent's clients all provided the same account information; had no

familiarity with the entities that sold claims to Resurgent's affiliates; did not know whether the

sale file provided by debt sellers or customers included billing statements; did not know which

department imported information into AMCS; did not know where case information came from;

did not know what would happen if there was an error in the data; did not know whether anyone

else at Resurgent checked debtor schedules or other information outside of AMCS to verify the

accuracy of proofs of claim; and did not know whether Resurgent's affiliates received any

representations or warranties from the seller.  CSMF ¶ 24.  She was aware that others audited

16

Resurgent's proofs of claim, SMF ¶ 34, but was not involved in that auditing process and did not know what criteria the quality control group used in its audits, CSMF ¶ 24. Ms. Gaines's responsibilities did not extend to many facets of Resurgent's bankruptcy department, and she had only limited knowledge of many of Resurgent's processes other than proof of claim review and filing. SMF ¶ 31. She was not involved in designing or maintaining Resurgent's bankruptcy servicing systems beyond proof of claim review and filing. SMF ¶ 35.

However, Ms. Gaines was aware that other Resurgent employees were responsible for other aspects of Resurgent's systems and believed that those employees were competent and professional. SMF ¶ 37. Based on her confidence in Resurgent's systems and her colleagues, she testified: "I trust the system, I know the people, I have confidence that it's correct." SMF ¶ 38. Ms. Gaines had a general understanding that Resurgent had systems other than proof of claim review and filing that related to proofs of claim. SMF ¶ 36. She had no knowledge, information, or belief about the debts in relation to which other claims processors reviewed and approved proofs of claim, or the bankruptcy cases in which such proofs of claim were filed. SMF ¶ 21. But, she had confidence in the other Resurgent employees who reviewed and approved proofs of claim and had confidence in the reliability of Resurgent's systems and processes for validating account information and generating proofs of claim. SMF ¶ 20. She knew that those claims processors were required to maintain an accuracy rate of at least 97% based on the criteria surveyed in Resurgent's internal audits. SMF ¶ 27. She was aware that Resurgent's quality control group informed claims processors when it found errors in their work. SMF ¶ 28. She was also aware that Resurgent only rarely received objections to its proofs of claim. SMF ¶ 29. During the period that her signature was being affixed to all of Resurgent's unsecured proofs of claim, Ms. Gaines trusted the system. SMF ¶ 30.

**F.      Changes to Resurgent's Leadership and Proof of Claim Practices**

In November 2014, Mr. Richard was transitioned out of Resurgent's bankruptcy leadership.  Stip. ¶ 74.  Among the catalysts for the change was an email sent in September 2014 by Bryan Faliero, who was then employed by Sherman Capital Markets, to Benjamin Navarro and Brett Hildebrand, who were also principals of Sherman Capital Markets.  Stip. ¶¶ 75-76; CSMF ¶ 60.  In the email, Mr. Faliero raised numerous concerns, including a concern that the signature on Resurgent's proofs of claim did not match the identity of the person who reviewed those proofs of claim.  Stip. ¶ 78.  Mr. Faliero stated "POC filing process (like affidavits) same person review must sign – we find internally that signature of reviewer is not reviewer."  Stip. ¶ 78.  Mr. Navarro forwarded the email to Tim Grant, then-CEO of Resurgent, with the comment "Seems like it's time to make a change.  What do you think?"  CSMF ¶ 60.

Within a month after Mr. Faliero's email, Resurgent began developing an upgrade to its BKS system, known as BKS 1.6.0, that would allow proofs of claim to be generated and filed with the electronic signature and CM/ECF credentials of the individual claims processor who approved the proof of claim.  Stip. ¶¶ 63, 79.  The BKS upgrade took several months to execute and was ultimately implemented in April 2015.  Stip. ¶¶ 65-66.

Meanwhile, on December 1, 2014, Resurgent created a draft policy, "BU PT-086," that specified that "[a]ll proofs of claim are reviewed and approved by the claim signer."  Stip. ¶ 67.  The policy was drafted, in part, because a potential seller of debt to LVNV had requested a copy of such a policy.  Stip. ¶ 67.  The policy and its specification as to the claim signer were approved on December 29, 2014.  Stip. ¶ 68.  The policy was not implemented by Resurgent until February 19, 2015 or later.  Stip. ¶ 69.

On February 19, 2015, Resurgent learned that the United States Trustee for Region 13 intended to take discovery regarding Resurgent's proof of claim practices in two cases then-pending in the United States Bankruptcy Court for the Western District of Missouri.  Stip. ¶ 70.[6] Upon learning of those efforts, Resurgent uploaded BU PT-086 to its procedures library, CSMF ¶ 72, and prioritized implementation of BKS 1.6.0, Stip. ¶ 71.  Resurgent also discontinued the practice of using Ms. Gaines's signature on proofs of claims she had not reviewed.  CSMF ¶¶ 63, 71.  In the interim, before BKS 1.6.0 was ready, Resurgent determined that Ms. Gaines alone should review unsecured proofs of claim.  Stip. ¶ 72.

BKS 1.6.0 was rolled out in April 2015.  Stip. ¶ 73.  Since that time, Resurgent has required, for every unsecured proof of claim, that the reviewer, signer, and filer (*i.e.*, where applicable, the individual whose CM/ECF credentials are used to file the proof of claim) be the same person.  Stip. ¶ 64.  Its current practice is to affix the signature of the claims processor who reviewed the claim to the proof of claim form upon approval.  Stip. ¶ 25.  Since July 2016, Resurgent has also required claims processors to review the PDF proof of claim form generated by BKS in addition to their review of the information used to populate the proof of claim form. SMF ¶ 49.

Resurgent has historically understood that interest on a credit card debt was recapitalized monthly, such that the total prepetition balance would be properly identified on a proof of claim as principal.  SMF ¶ 64.  In December 2016, the United States Bankruptcy Court for the Eastern

---

[6]  When the summary judgment motions were filed in this adversary proceeding, Resurgent and the United States Trustee Program ("USTP") were litigating the issue of whether Resurgent should be sanctioned for its prior proof of claim signing and filing practices in three different bankruptcy courts: the District of Maine, the Western District of Missouri, and the Northern District of Texas.  Resurgent asserts that, during settlement negotiations, it rejected the USTP's "take it or leave it" demand that Resurgent pay a significant sum to the USTP and withdraw or amend every pending proof of claim that had been filed by Ms. Gaines without her personal review.  SMF ¶ 83.  The UST asks the Court to strike the statement because it is excludable under Fed. R. Evid. 408 and because it is not relevant to the question of whether Resurgent should be sanctioned.  The UST's request is granted on both grounds.

District of Virginia ruled that, notwithstanding any such recapitalization, Rule 3001 requires a

proof of claim to itemize principal and interest.  SMF ¶ 65 (citing Maddux v. Midland Credit

Mgmt., Inc., 567 B.R. 489 (Bankr. E.D. Va. 2016)).  As originally designed, Resurgent's BKS

system did not have the ability to break out interest and fees on proofs of claim.  CSMF ¶ 84.

However, since that December 2016 ruling, Resurgent has implemented a process to itemize

principal and interest on proofs of claim filed in the Eastern District of Virginia, and it is

working on a process that would permit such itemization on all proofs of claim filed nationwide.

SMF ¶ 66.

While the USTP's investigation into Resurgent's signing and filing practices was

ongoing, between July 2016 and January 2017, Resurgent caused Ms. Gaines to review, in every

bankruptcy case open at that time, all proofs of claim filed with her signature that were originally

reviewed and approved by a different claims processor.  SMF ¶ 79.  Ms. Gaines reviewed

approximately 85,000 proofs of claim, using the same process that she typically uses when

reviewing proofs of claim prior to filing.  SMF ¶ 80.  In that review, she found fewer than 50

proofs of claim for which the BKS system highlighted discrepancies, and Resurgent withdrew or

amended every such proof of claim.  SMF ¶ 81.  The Cushman POC was neither withdrawn nor

amended as a result of that review.

## G.    Resurgent's Other Practices

In October 2011, the Maryland State Collection Agency Licensing Board and Office of

the Commission of Financial Regulation entered a summary order directing Resurgent, LVNV,

and other affiliates and officers to cease debt collection activities in Maryland.  Stip. ¶ 105.  The

Board found, among other things, that Resurgent had submitted affidavits that were "false,"

"deceptive," "deficient," and "misleading."  CSMF ¶ 59.  The Board found that Resurgent had

submitted affidavits that were based on employees' review of Resurgent's books and records, SMF ¶ 72, and determined that those employees did not have sufficient personal knowledge of the records to offer competent testimony as required by the Maryland Rules of Procedure, SMF ¶ 73.  The Board also found that Resurgent's employees were not competent to testify about the creation and maintenance of the business records of certain originating creditors or their business practices.  SMF ¶ 74.  Without admitting any allegations, Resurgent and LVNV settled the matter in June 2012, agreeing to pay a penalty of $1 million, to dismiss 3,564 cases filed in Maryland, and to provide credits of more than $3.8 million to consumers.  Stip. ¶ 106.

## H.      Amendment of the Proof of Claim Form

In 2015, Official Form 10 was replaced by Official Form 410.  The attestation in Official Form 410 provides: "I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.  I declare under penalty of perjury that the foregoing is true and correct."  The revised form also contains an instruction in the margin near the signature line, which reads "The person completing this proof of claim must sign and date it.  FRBP 9011(b)."

## III.      Legal Analysis

## A.      Summary Judgment Standards

The entry of a summary judgment is warranted only when "there is no genuine dispute as to any material fact" and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When evaluating a motion for summary judgment, the Court views the record in the light most favorable to the opposing party, drawing all reasonable inferences in that party's favor.  Merchs. Ins. Co. of N.H., Inc. v. U.S. Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998).  Reasonable inferences are limited to those that may be drawn from the evidence "without resort to

speculation." Id. (quotation marks omitted).  A factual dispute is genuine if, on the evidence in the record, a factfinder could reasonably resolve the dispute in favor of either party.  Eldridge v. Gordon Bros. Grp. L.L.C., 863 F.3d 66, 77 (1st Cir. 2017); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990).  A factual dispute is material if it would affect the outcome of the case under the governing law.  Garside, 895 F.2d at 48.

"Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require [the Court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed."  Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010) (quotation marks omitted).  Although each motion must be decided on its own merits, neither must be considered in a vacuum.  Id.  Ultimately, summary judgment is warranted if "a nonmovant who bears the burden on a dispositive issue fails to identify significantly probative evidence favoring his position."  Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018) (quotation marks omitted).

The existence of cross-motions for summary judgment on Resurgent's complaint suggests that neither party perceives a need for a trial on that pleading.  That said, the issuance of a summary judgment is not ensured by the parties' desire to avoid a trial.  See Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2720 (4th ed. 2018) ("The fact that both parties simultaneously are arguing that there is no genuine dispute of fact . . . does not establish that a trial is unnecessary[.]").  Rule 7056 and its counterpart, Civil Rule 56, do not allow the Court to engage in factfinding.  Instead, the Court is required to determine whether there is any genuine dispute of material fact.  In this proceeding, because the imposition of sanctions is squarely within the Court's discretion, the Court has considerable latitude to identify and weigh the facts that might affect the outcome.  See CQ Int'l Co., Inc. v. Rochem Int'l, Inc., USA, 659 F.3d 53, 59 (1st Cir.

2011) (indicating that the trial court has "considerable latitude" to impose sanctions and is entitled to "extraordinary deference" when it decides to deny sanctions because it is "in the best position to evaluate the intricacies of a case and to reach conclusions about the motives of the parties and their counsel" (quotation marks omitted)).  In that discretionary process, the Court has determined that its decision would not be altered by any of the genuinely disputed facts even if, after a lengthy and expensive trial, every single one of those facts were found in favor of the UST.[7]

## B.   Burdens of Proof

Resurgent seeks a declaration that sanctions under Rule 9011, section 105, or the Court's inherent authority are not warranted.  The UST contends that Resurgent is subject to sanctions, should be sanctioned, and therefore is not entitled to the requested declaration as a matter of law. There is no statute, rule, or controlling caselaw allocating the burdens of proof on these disputes. Some courts assign the burden of proof under Rule 9011 to the party seeking sanctions under that rule.  *See, e.g.,* In re Schmelcher, No. 11-61607, 2015 WL 639076, at *7 (Bankr. N.D.N.Y. Feb. 13, 2015) ("The burden of proof is on the moving party to prove that [Rule 9011] sanctions are warranted."); *see also* Anaqua, Inc. v. Schroeder, No. 12-10710-FDS, 2014 WL 1795310, at *3 (D. Mass. May 5, 2014) (resolving all doubts in favor of the party defending a request for sanctions under Civil Rule 11); Featherston v. Goldman (In re D.C. Sullivan Co., Inc.), 843 F.2d 596, 598 (1st Cir. 1988) (explaining that Rule 9011 and Civil Rule 11 share a common etiology and that Civil Rule 11 "jurisprudence is largely transferable to Rule 9011 cases").  Some decisions suggest—but do not necessarily hold—that a party seeking sanctions under section 105

---

[7]  Civil Rule 56 must be followed scrupulously, but the Court will not apply it slavishly at the expense of Civil Rule 1.  *Cf.* Ricci v. Applebee's Ne., Inc., 297 F. Supp. 2d 311, 321 (D. Me. 2003) (declining to strictly enforce the provisions of D. Me. Civ. R. 56(d) in a manner that would undermine the objectives of D. Me. Civ. R. 1).

shoulders the burden of proof. *See* Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 462 F.3d 14, 20 (1st Cir. 2006) (concluding that a creditor willfully violated the discharge injunction, and that the debtors were "therefore entitled to establish and recover . . . appropriate relief under" section 105); Canning v. Beneficial Me., Inc. (In re Canning), 442 B.R. 165, 170 (Bankr. D. Me. 2011) ("Surely, the [debtors] bear the burden of proof to sustain their plea for [section 105] sanctions."). In the absence of contrary, controlling authority, the burden of establishing the necessity or propriety of the sanctions at issue here is assigned to the UST as the party seeking affirmative relief.

Although Resurgent initiated this proceeding by filing a complaint for a declaratory judgment, the parties bear the same burdens of proof that they would have shouldered had the proceeding been brought by the UST. *See* Medtronic, Inc. v. Mirowski Family Ventures, LLC, 571 U.S. 191, 199 (2014) (explaining that the burden of proof is a "substantive aspect of a claim" and that a request for declaratory relief does not affect substantive rights (quotation marks omitted)); *see also* Nat'l Fire & Marine Ins. Co. v. Wells, No. 5:16-cv-00451-HNJ, 2018 U.S. Dist. LEXIS 40496, at *31 (N.D. Ala. Mar. 13, 2018) (applying Medtronic in the context of a declaratory judgment action involving a breach of contract claim). As such, the fundamental question is whether, based on the universe of undisputed facts, the UST has met his burden of establishing that Resurgent should be sanctioned under any legal theory.

**C.     Rule 9011**

    **i.     Text and General Principles**

Most papers filed in a bankruptcy case must be signed, by either a party's attorney or, in the case of an unrepresented party, by the party. Fed. R. Bankr. P. 9011(a). When a paper is

presented to the court, the attorney or party that signed the paper makes certain representations to

the court.  Fed. R. Bankr. P. 9011(b).  In particular, Rule 9011(b) establishes that:

> [b]y presenting to the court (whether by signing, filing, submitting, or later
> advocating) a petition, pleading, written motion, or other paper, an attorney or
> unrepresented party is certifying that to the best of the person's knowledge,
> information, and belief, formed after an inquiry reasonable under the
> circumstances, –
>
>> (1) it is not being presented for any improper purpose, such as to harass or to
>> cause unnecessary delay or needless increase in the cost of litigation;
>
>> (2) the claims, defenses, and other legal contentions therein are warranted by
>> existing law or by a nonfrivolous argument for the extension, modification, or
>> reversal of existing law or the establishment of new law;
>
>> (3) the allegations and other factual contentions have evidentiary support or, if
>> specifically so identified, are likely to have evidentiary support after a
>> reasonable opportunity for further investigation or discovery; and
>
>> (4) the denials of factual contentions are warranted on the evidence or, if
>> specifically so identified, are reasonably based on a lack of information or
>> belief.

Fed. R. Bankr. P. 9011(b).  Like Rule 9011(a), Rule 9011(b) applies to attorneys and

unrepresented parties.

Taken together, Rule 9011(a) and (b) dictate a logical sequence.  First, an attorney must

make a reasonable inquiry into certain matters, including the reasons why a particular paper is

being submitted to the court, Fed. R. Bankr. P. 9011(b)(1), the support for the legal arguments in

that paper, Fed. R. Bankr. P. 9011(b)(2), and the evidentiary support for factual matters (*i.e.*,

contentions and denials of contentions) in the paper, Fed. R. Bankr. P. 9011(b)(3), (4).  After

these inquiries have been made and before the paper is submitted to the court, the paper must be

signed.  When the paper is presented to the court, the attorney makes the Rule 9011(b)

certifications as a matter of law.  *See* Georgine M. Vairo, Rule 11 Sanctions: Case Law,

Perspectives and Preventive Measures 29 (Richard G. Johnson ed., 3d ed. 2004) [hereinafter

Vairo, Rule 11 Sanctions] (identifying the presentation of a litigation paper as the triggering

event under the 1993 version of Civil Rule 11).  The "reasonable inquiry" requirement is distinct

from, although closely related to, the certifications made when an attorney presents a litigation

paper to the court.  *See* Navarro-Ayala v. Nunez, 968 F.2d 1421, 1426 (1st Cir.1992) ("The duty

of reasonable inquiry perforce requires that the signer of a pleading act upon the knowledge he

acquires."); Brandt v. Schal Assocs., Inc., 121 F.R.D. 368, 379 (N.D. Ill. 1988) (noting that while

many Civil Rule 11 cases evaluate the reasonableness of the prefiling investigation, a related

issue is whether factual allegations made to the court were justified by the evidence unearthed in

that investigation).  Each of these requirements applies equally to an unrepresented party who

presents papers to the court in a bankruptcy case.

        In construing and applying Rule 9011, the Court is mindful of the rule's central purpose

and the manner in which it has been interpreted and applied by the Supreme Court, the First

Circuit, and other courts.  *See, e.g.,* Bus. Guides, Inc. v. Chromatic Commc'ns Enters. Inc., 498

U.S. 533 (1991); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990); Eldridge v. Gordon

Bros. Grp., L.L.C., 863 F.3d 66 (1st Cir. 2017); Baker v. Harrington (In re Hoover), 827 F.3d

191 (1st Cir. 2016); CQ Int'l Co., Inc. v. Rochem Int'l, Inc., USA, 659 F.3d 53 (1st Cir. 2011);

Ameriquest Mortg. Co. v. Nosek (In re Nosek), 609 F.3d 6 (1st Cir. 2010); Young v. City of

Providence ex rel. Napolitano, 404 F.3d 33 (1st Cir. 2005); B-Line, LLC v. Wingerter (In re

Wingerter), 594 F.3d 931 (6th Cir. 2010).  Rule 9011 is aimed at curbing the abuse of the judicial

system that occurs when litigants make written representations to the court "without taking the

necessary care" in preparing them.  *See* Cooter & Gell, 496 U.S. at 397-98.  "Baseless filing puts

the machinery of justice in motion, burdening courts and individuals alike with needless expense

and delay."  Id. at 398.  The central purpose of Rule 9011 is to discourage such baseless filings

and minimize the attendant burdens.  *See* id. at 393.  To this end, Rule 9011 requires an attorney

or a party to "stop-and-think" before presenting litigation papers to the court.  *See* Fed. R. Civ. P.

11 Advisory Committee Note 1993.

When Rule 9011(b) has been violated, the court may, subject to certain limitations,

"impose an appropriate sanction upon the attorneys, law firms, or parties that have violated

subdivision (b) or are responsible for the violation."  Fed. R. Bankr. P. 9011(c).[8]  A sanction for

violation of Rule 9011(b) must "be limited to what is sufficient to deter repetition of such

conduct or comparable conduct by others similarly situated."  Fed. R. Bankr. P. 9011(c)(2).

Generally, the sanction "may consist of, or include, directives of a nonmonetary nature" or "an

order to pay a penalty into court[.]"  Id.  Rule 9011 is not properly invoked for "minor,

inconsequential violations[,]" *see* Fed. R. Civ. P. 11 Advisory Committee Note 1993, or for

"slight cause" because "the wheels of justice would grind to a halt" if litigants were sanctioned

every time that they made "dubious factual claims[,]" Young, 404 F.3d at 39-40.  The threshold

for a determination that Rule 9011(b) has been violated is fault that amounts to at least culpable

carelessness.  *See* Méndez-Aponte v. Bonilla, 645 F.3d 60, 68 (1st Cir. 2011).  But the standard

for imposition of sanctions under Rule 9011(c) is higher, and for good reason.  *See* Dubois v.

U.S. Dep't of Agric., 270 F.3d 77, 83 (1st Cir. 2001) (affirming a refusal to impose sanctions

under Civil Rule 11 where conduct at issue was not "egregious"); Vairo, Rule 11 Sanctions at

244 ("Rule 11 . . . sanctions should be imposed only in exceptional circumstances.").  Sanctions

under Rule 9011(c) should be reserved for claims that are "plainly unmeritorious."  *See* Eldridge,

863 F.3d at 88; *see also* In re Hoover, 827 F.3d at 197 (affirming sanctions imposed for "filings

---

[8]  Rule 9011(c) governs the imposition of sanctions for a violation of Rule 9011(b) and contains a "safe harbor" when sanctions are sought by motion.  Fed. R. Bankr. P. 9011(c)(1)(A).  Resurgent has expressly waived the protections of the safe harbor in this proceeding.

supported only by artifice" which served "to delay the proceedings and impose costs on the other

parties"). Within the confines of these instructive principles, the court "has significant discretion

in determining what sanctions, if any, should be imposed for a violation" of Rule 9011(b). *See*

Fed. R. Civ. P. 11 Advisory Committee Note 1993.

### ii.    The Rule 9011 Actor

The initial question is which person or entity was subject to the strictures of Rule 9011

when the Cushman POC was presented to the Court. *See* <u>Hannon v. Countrywide Home Loans,</u>

<u>Inc. (In re Hannon)</u>, 421 B.R. 728, 731 (Bankr. M.D. Pa. 2009) (concluding that Rule 9011

applies to the filing of proofs of claim). The UST observes, quite correctly, that Ms. Gaines's

signature appears on the Cushman POC in relative proximity to the instructions indicating that

Rule 9011 applied to the proof of claim. Because Ms. Gaines had no personal knowledge of the

debt owed by Ms. Cushman to LVNV and because Ms. Gaines did not review the proof of claim

before it was presented to the Court, there was, in the UST's estimation, an unmistakable

violation of Rule 9011. In the alternative, the UST contends that even if Ms. Gaines had

reviewed the Cushman POC, or if Ms. Gosnell had signed the proof of claim, there would still

have been a violation of Rule 9011 because the review process "did not include reading the POC

or any documents substantiating the debt, but merely scanning a computer screen for 10-30

seconds to check whether Resurgent's computer system highlighted any discrepancies in

Resurgent's internal information." Resurgent counters that Ms. Gaines reasonably relied on her

coworkers and Resurgent's automated processes, and that there was nothing wrong with her

authorizing Resurgent to affix her signature to proof of claim forms she had not reviewed given

her familiarity with Resurgent's procedures and employees. Defending its reliance on automated

processes, Resurgent asserts that "[t]he law is not a Luddite. In the twenty-first century, it is

28

surely permissible to rely on a sophisticated computer system to populate a standardized form

with data—especially since automation eliminates the human error that accompanies manual

input of data."

The implication of the UST's initial argument is that *Ms. Gaines* had a separate and

nondelegable duty under Rule 9011.  The UST's attempt to treat Ms. Gaines as the Rule 9011

actor finds some traction in the personal pronouns used in the instructions on Official Form 10,

the form's references to the "individual" completing the proof of claim, and its citation to Rule

9011.  The UST's alternate focus on Resurgent's processes is consistent with the view that Rule

9011 responsibility rests with *Resurgent* as the "unrepresented party" that filed the proof of

claim.  This latter view is the better one.

Rule 9011 does not, as the UST seems to argue, apply to three categories of actors:

attorneys, unrepresented parties, *and* agents of unrepresented parties (here, Susan Gaines).  *See*

Fed. R. Bankr. P. 9011(a)-(b).  Rule 9011 binds only two categories of actors: attorneys and

unrepresented parties.  *See* id.  When a creditor or servicer retains an attorney to file a proof of

claim and a proof of claim is filed by the attorney, Rule 9011 applies to that attorney.  In re

Obasi, No. 10-10494, 2011 WL 6336153, at **3-7 (Bankr. S.D.N.Y. Dec. 19, 2011).  Unlike the

proof of claim at issue in Obasi, no attorney was involved in filing the Cushman POC.  So, the

question is, who was the unrepresented party that presented the Cushman POC to the Court?

Although Ms. Gaines was the individual who signed the Cushman POC, she is not a party

in the Cushmans' chapter 13 case and was not the "unrepresented party" who filed the Cushman

POC.  *See* Fed. R. Bankr. P. 9011(b).  Ms. Gaines had no right to enforce the claim and did not

seek to activate the claims allowance process for her own benefit when her signature was affixed

to the proof of claim form.  Instead, Resurgent was the real party in interest as to the Cushman

POC.  *See* Greer v. O'Dell, 305 F.3d 1297, 1303 (11th Cir. 2002) (concluding that servicer of

unsecured credit card debt was the real party in interest as to a proof of claim).

In general, a legal entity can act only through its authorized agents, and when agents

perform tasks within the scope of their authority, the entity is responsible for those delegated

tasks.  An entity's nonlawyer agents may not ordinarily represent the entity in federal court;

instead, the entity must appear through a licensed attorney.  Schreibman v. Walter E. Heller &

Co. of P.R. (In re Las Colinas Dev. Corp.), 585 F.2d 7, 13 (1st Cir. 1978).  As a result of the

prohibition on pro se appearances by entities, in most contexts, Rule 9011 applies to individuals:

attorneys or individuals appearing pro se.  However, entities are specifically permitted to use

nonlawyer agents to file proofs of claim.  *See* Fed. R. Bankr. P. 9010(a)(2) (permitting a creditor

to perform any act that does not constitute the practice of law through an authorized agent); Fed.

R. Bankr. P. 3001(b) (permitting a creditor to execute a proof of claim through an authorized

agent); In re Dunklin, No. 04-41631 DHS, 2006 WL 2806234, at *5 (Bankr. D.N.J. Sept. 27,

2006) ("[T]he preparation and filing of a proof of claim is an administrative function that can be

performed by an authorized agent.").  Thus, when an entity submits a proof of claim through and

over the signature of an authorized nonlawyer agent, the entity acts as an unrepresented party for

purposes of Rule 9011.  Contrary to the UST's contentions, Resurgent's use of Ms. Gaines's

signature on the Cushman POC did not give rise to an obligation that Ms. Gaines personally

undertake the inquiry required by Rule 9011.  Ms. Gaines did not sign on her own behalf.  She

signed for Resurgent.  *See* Casamatta v. Resurgent Capital Servs., L.P. (In re Freeman-Clay), 578

B.R. 423, 432 (Bankr. W.D. Mo. 2017) (observing that "Resurgent, as the servicer for the

underlying creditor [was] the 'party' whose signature [was] required" on a proof of claim, and

indicating that Ms. Gaines, as Resurgent's agent, signed for Resurgent); *cf.* Bus. Guides, 498

U.S. at 547 (treating the signatures of an entity's president and director of research as signatures

of the entity and suggesting that the entity was required to undertake the reasonable inquiry

required by Rule 9011).

That the Cushman POC was filed with the CM/ECF credentials assigned to Resurgent

underscores that Resurgent, not Ms. Gaines, was the party who filed that proof of claim for

purposes of Rule 9011. *See* Bankr. D. Me. Administrative Procedures for Filing, Signing,

Maintaining, and Verifying Pleadings and Other Documents in the Electronic Case Filing (ECF)

System § I.C.4 ("The password required to submit documents to the [CM/ECF] System . . .

serves as a signature for purposes of Fed. R. Bankr. P. 9011[.]"). This is an important

intermediate conclusion, because it broadens the focus of the next inquiry. Instead of a myopic

fixation on the actions and knowledge of a single individual (Ms. Gaines), a proper Rule 9011

analysis looks to the actions and knowledge of the unrepresented party (Resurgent). Because

Resurgent is an entity that can lawfully act through multiple agents, the inquiry is necessarily

broader than the UST's initial argument suggests.

Nevertheless, the Court agrees with the UST's assertion that the claims processor who

reviewed the Cushman POC should have been the person who signed it. When the Cushman

POC was filed, the instructions on Official Form 10 required the individual who completed a

proof of claim to sign it and make a declaration under penalty of perjury. Those instructions and

the declaration were intended to impose a standard of reasonableness upon "a real, live person"

who was to "take responsibility for assuring the accuracy of a proof of claim." Minutes,

Advisory Comm. on Bankr. Rules, April 29-30, 2010, at 21. Because her signature was affixed

to the Cushman POC, Ms. Gaines declared "under penalty of perjury that the information

provided in [that] claim [was] true and accurate to the best of [her] knowledge, information, and

31

reasonable belief." *See* Official Form 10. The parties disagree about whether Ms. Gaines could have relied on Resurgent's systems to make that declaration in the absence of any personal knowledge of the contents of the Cushman POC, and they dispute the extent to which proofs of claim can be analogized to affidavits. There is no need to resolve those disputes here. This proceeding does not involve a request for damages for perjury, a criminal prosecution for perjury, or any sort of request for relief against Ms. Gaines individually. Instead, this proceeding turns on an alleged violation of Rule 9011(b) and a request for a declaratory judgment as to the propriety of sanctions against Resurgent under, *inter alia*, Rule 9011(c).

Resurgent may have failed to comply with the instructions on Official Form 10 by affixing Ms. Gaines's signature to all unsecured proofs of claim generated by the BKS system, including the Cushman POC. If so, Resurgent may have also contravened Rule 3001(a), which requires a proof of claim to "conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). But the analysis under Rule 9011 is a separate matter. *See* In re Avery, No. 15-30074, 2015 WL 4498181, at *3 (Bankr. N.D. Ohio July 22, 2015) (explaining that the consequence of failing to comply with Official Form 10 is that the proof of claim loses the benefit "of being prima facie evidence of the validity and amount of the claim"); Critten v. Quantum3 Grp., LLC (In re Critten), 528 B.R. 835, 839 (Bankr. M.D. Ala. 2015) ("The remedy for the failure to comply with Rule 3001 is to strip the claim of its prima facie validity.").

Although the instructions on Official Form 10 referenced Rule 9011, failure to comply with those instructions is not necessarily the equivalent of a failure to comply with the rule. The instructions on the form—on which the UST places significant emphasis—are general explanations of the law, incapable of expanding the operation of a rule beyond its plain text. Faced with competing explanations of the interplay between Official Form 10 and Rule 9011, the

32

Court opts for the construction that is more consonant with Rule 9011. *See* Fed. R. Bankr. P. 9009(c) ("The forms shall be construed to be consistent with [The Federal Rules of Bankruptcy Procedure.]"). That construction treats Resurgent (rather than Ms. Gaines) as the unrepresented party that filed the Cushman POC and thereby assumed responsibility for the Rule 9011 certifications and the prerequisite duty of reasonable inquiry.[9]

### iii.    Resurgent's Prefiling Inquiry and Representations to the Court

The nature of a reasonable prefiling inquiry varies depending on all the circumstances of the particular case. <u>Cooter & Gell</u>, 496 U.S. at 401. Whether a litigant satisfies the affirmative Rule 9011 duty "to conduct a reasonable inquiry into the facts . . . depends on the objective reasonableness of the litigant's conduct under the totality of the circumstances." *See* <u>CQ Int'l Co.</u>, 659 F.3d at 62 (quotation marks omitted). In gauging compliance with Rule 9011, a litigant's conduct must be judged on the basis of what was reasonable at the time, rather than through the prism of hindsight. *See* <u>Cruz v. Savage</u>, 896 F.2d 626, 633 (1st Cir. 1990). Circumstances that bear on compliance with Rule 9011 include "the complexity of the subject matter, the party's familiarity with it, the time available for inquiry, and the ease (or difficulty) of access to the requisite information." *See* <u>CQ Int'l Co.</u>, 659 F.3d at 62-63 (quotation marks

---

[9] Even if Ms. Gaines somehow violated Rule 9011 by allowing her employer to affix her signature or, if Resurgent violated Rule 9011 by affixing Ms. Gaines's signature to proofs of claim she had not reviewed, Resurgent has ceased that practice. Since the filing of the Cushman POC, Resurgent has implemented a practice that requires a claims processor to personally sign a proof of claim after review and prior to filing. Resurgent commenced its efforts to change the challenged signature practices before learning of the USTP's discovery motions in the cases in the Western District of Missouri. While Resurgent could have initiated this change earlier, or completed and implemented it more quickly, the change was nevertheless voluntary. Because of this new practice, sanctions would not be necessary to deter Resurgent from continuing its prior practice. Since the filing of the Cushman POC, the proof of claim form has also been amended to expressly state that the individual signing the form has "examined the information in [the] Proof of Claim[.]" Official Form 410. In light of this amendment, sanctions would not be necessary to deter other similarly situated parties from engaging in conduct similar to Resurgent's former signature practice.

omitted).  The rule does not require an investigation to the point of absolute certainty, id. at 63,

and it does not preclude reliance on information received from others, Dubois, 270 F.3d at 82.

The scope of a reasonable inquiry is, of course, informed by the elements of the

applicable substantive law.  For example, if a plaintiff files a complaint seeking recovery on a

legal theory that requires proof of extreme and outrageous conduct, the plaintiff must have made

a prefiling inquiry to determine whether the defendant's conduct could be fairly characterized as

extreme and outrageous.  See Muthig v. Brant Point Nantucket, Inc., 838 F.2d 600, 605 (1st Cir.

1988), abrogated in part on other grounds by Cooter & Gell v. Hartmarx Corp., 496 U.S. 384

(1990); see also In re Melendez, 235 B.R. 173, 195-96 (Bankr. D. Mass. 1999) (concluding that,

in the reaffirmation context, reasonable inquiry requires an investigation and disclosure of

"critical facts relating to the debt sought to be reaffirmed, the nature and value of any underlying

collateral and the financial circumstances of the debtor").  If a servicer seeks payment on a debt

by filing a proof of claim in a bankruptcy case, the servicer must take measures to ensure that the

debtor is liable for the debt.  It must also obtain the information about the claim required by Rule

3001(c).  Two of the requirements of Rule 3001(c) are implicated here.  First, if the debtor is an

individual and the claim includes interest or fees incurred prepetition, the proof of claim must be

filed with an itemized statement of the interest and fees. Fed. R. Bankr. P. 3001(c)(2)(A).

Second, for most claims based on an open-end or revolving consumer credit agreement, the proof

of claim must be accompanied by a statement of, among other things, the date of the account

holder's last transaction and the date of the last payment.  See Fed. R. Bankr. P.

3001(c)(3)(A)(iii)-(iv).

Resurgent made a reasonable inquiry and a representation supported by evidence in its

possession as to Ms. Cushman's liability on the debt described in the Cushman POC.  Consistent

with its ordinary practices, Resurgent confirmed that Ms. Cushman had filed a bankruptcy case

and that the debt had not previously been discharged.  Resurgent's affiliate obtained

representations and warranties as to the validity of the debt.  Resurgent obtained data from its

affiliate when it agreed to service the debt and it relied on that data in the ordinary course of

business.  That data indicated a total debt in the amount of $575.49 and Resurgent asserted a

claim for that exact amount.  Resurgent thus discharged its Rule 9011 duty to investigate and

secure evidence supporting its allegation as to Ms. Cushman's liability for the asserted debt.  *Cf.*

In re Wingerter, 594 F.3d at 934, 940 (holding that a servicer made a reasonable inquiry into a

claim as required by Rule 9011(b) when, *inter alia*, it relied on warranties as to the validity of the

claim, relied on data sold to it, and engaged in processes similar to Resurgent's "match" and

"research" processes).

Resurgent also made a reasonable inquiry and a representation supported by evidence in

its possession as to the date of the last payment on the debt underlying the Cushman POC.  The

data string reported a last payment date of April 13, 2014.  Resurgent's automated processes

transferred that date from the data string to AMCS, from AMCS to BKS, and from BKS onto the

statement attached to the Cushman POC.  Resurgent also obtained billing statements associated

with the claim that reported a last payment date of April 12, 2014.  When reviewing the

Cushman POC before filing, Resurgent did not compare the last payment date reported on the

data string with the last payment date reported on the billing statements.  Instead, it relied

exclusively on the data string.[10]  As explained in more detail below, Resurgent's reliance on the

---

[10] Neither the parties' stipulation nor their statements of material fact identify when Resurgent received the
billing statements.  Those materials simply indicate that Resurgent sometimes received billing statements with the
data string; Resurgent could request billing statements if it did not receive them with the data string; and Resurgent
produced billing statements for the Cushman POC in the course of this proceeding.

data string was not objectively unreasonable. Resurgent's allegation of the last payment date was both preceded by a reasonable inquiry and supported by evidence in its possession.

The same cannot be said of Resurgent's allegation of the last transaction date. The data string associated with the debt underlying the Cushman POC did not include a column for, or otherwise identify, the last transaction date. Resurgent imported the information in the data string into its system of record and that information was used to populate the statement attached to the proof of claim. Somehow, this automated system of data transfer caused that statement to report that the last transaction occurred on April 13, 2014. It was objectively unreasonable for Resurgent to rely on the data string for information regarding the last transaction date because the data string did not include that type of information. This reliance was culpably careless. To comply with its duty to undertake a reasonable inquiry, Resurgent should have either designed its data string to collect that information or examined the billing statements, which reported a last transaction date of May 22, 2014. Instead, Resurgent made an allegation of the last transaction date that lacked any evidentiary support. Resurgent's contention that this allegation may have benefited the debtor, the trustee, and other creditors does not render its inquiry more reasonable or otherwise provide an evidentiary basis for the allegation. Resurgent's conduct leading up to and including its allegation of the date of the last transaction did not meet the standards of Rule 9011(b).

Resurgent may have also transgressed Rule 9011(b) by characterizing the entire amount of Ms. Cushman's credit card debt as principal. The data string reported a filing date balance ($575.49) in one column, set forth a principal balance ($396.46) in another column, and aggregated interest and fees ($197.59) in another column. Resurgent apparently relied on its belief that credit card debt recapitalizes interest as principal each month and caused its automated

process of data transfer to allege that the claim consisted of $0.00 in interest, $0.00 in fees, and

$575.49 in principal.  The UST contends that belief was unreasonable and effectively short-

circuited Resurgent's inquiry.  The Court need not decide whether that belief was reasonable,

and there is no need to make factual findings on these issues after a trial.  For the purposes of this

decision, the Court assumes, without deciding, that Resurgent violated Rule 9011(b) by failing to

make well-supported allegations of principal, interest, and fees on the statement attached to the

Cushman POC.

The UST asserts that, in order to comply with Rule 9011(b), Resurgent must review the

billing statements underlying a claim and compare the information in those statements with the

information in the proof of claim.  To the extent that Resurgent's data string is not designed to

capture the kinds of information that must be reported on a proof of claim, the Court agrees.

However, the Court is not persuaded that Resurgent should be required to corroborate all of the

information reported on the data string by engaging in an independent review of the billing

statements in every circumstance.  The Court is even less persuaded by the UST's contention that

a reasonable inquiry preceding the filing of a proof of claim must involve review of the

schedules filed by the debtor.  Debtors' schedules may carry evidentiary weight in some

contexts.  *See, e.g.,* Fed. R. Bankr. P. 3003(b)(1) (providing that, in a chapter 9 or chapter 11

case, the schedule of liabilities "shall constitute prima facie evidence of the validity and amount

of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated"); In

re Rehman, 479 B.R. 238, 244 n.11 (Bankr. D. Mass. 2012) (observing that some courts treat

schedules as admissions under Fed. R. Evid. 801(d)).  But that reality does not render a failure to

consult schedules when preparing a proof of claim objectively unreasonable.  Like other actors

who present litigation documents to the Court, Resurgent is entitled to rely on information

provided by its affiliates if that reliance is reasonable.  *See* Hadges v. Yonkers Racing Corp., 48

F.3d 1320, 1329-30 (2d Cir. 1995); *see also* In re Wingerter, 594 F.3d at 940-41 (holding that

servicer did not violate Rule 9011(b) by relying on account information without reviewing

underlying documents when servicer and debt seller both researched the debt and the two had a

reliable track record).  Some courts have espoused the view that Rule 9011 "does not require

steps that are not cost-justified."  Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1083

(7th Cir. 1987).  If Resurgent were required to corroborate all of the information in the data

string by reviewing billing statements and schedules, that would increase the time and money

spent on a process that is intended to be simple and inexpensive "for all parties including

creditors."  Am. Express Bank, FSB v. Askenaizer (In re Plourde), 418 B.R. 495, 504 n.12

(B.A.P. 1st Cir. 2009).  According to Resurgent, reviewing billing statements would do little to

improve the accuracy of its proofs of claim because the information in those statements derives

from the same source as the information in its data string.[11]  The Court is not persuaded that

reviewing debtors' schedules would necessarily advance the goal of accuracy in every instance

either.  There is nothing inherently wrong with a creditor trying to be efficient when it comes to

the preparation of proofs of claim.  The problem only arises when the price of efficiency is the

accuracy of the information in the proof of claim.

Next, the Court rejects the UST's contention that Resurgent violated Rule 9011 because it

did not require its claims processors to review the actual proof of claim form.  The Court is

---

[11]  Perhaps Resurgent is right about that, perhaps not.  Either way, a de facto requirement that a creditor or
servicer review billing statements before filing a proof of claim for a debt arising out of the use of a credit card
would seem to frustrate Rule 3001(c) at some level.  Rule 3001(c) provides that, in most circumstances, when a
claim is based on a writing, the writing must be attached to the proof of claim.  Fed. R. Bankr. P. 3001(c)(1).  There
is, however, an exception to this requirement for claims based on an open-end or revolving consumer credit
agreement.  *See* Fed. R. Bankr. P. 3001(c)(1), (3).  Because the rules do not require a revolving consumer credit
agreement to be attached to the proof of claim, it would make little sense for the Court to fashion an unwritten and
unbending rule that the agreement, or the billing statements related to the agreement, must be inspected before the
proof of claim is filed.

convinced that claims processors' review of the BKS screen was the functional equivalent of reviewing the proof of claim form because that screen held the data that was used to populate the form. Reviewing the information on the BKS screen is, as Resurgent observes, similar to reviewing the online fields used to file a proof of claim through the Court's ePOC system, a system that allows a proof of claim to be filed without the filer actually reviewing the proof of claim form. In some respects, a preprinted form like the proof of claim form differs from most pleadings or motions prepared by an attorney. The proof of claim form contains instructions or headings in each field, prompting alphanumeric data entries of a specific nature that can be easily automated for general unsecured proofs of claim. Unlike the preparation of that form, the preparation of pleadings and motions requires legal skill and judgment. To a certain extent, these differences justify a less literal application of Rule 9011's "read before signing" requirement to a proof of claim asserting a general unsecured claim.[12]

At some level, the Rule 9011(b) barometer must be tied to the nature of the litigation paper in question. One of the fundamental purposes of the rules governing proofs of claim is "to simplify the claims allowance process and provide a fair and inexpensive process for all parties including creditors." In re Plourde, 418 B.R. at 504 n.12; accord In re Crutchfield, 492 B.R. 60, 68 (Bankr. M.D. Ga. 2013). That purpose would not be served by requiring the sort of time- and labor-intensive analysis of the evidentiary basis for the factual allegations in a proof of claim that the UST desires. The notion of reasonableness implies a range of conduct, with ideal processes resting at one end of the range, objectively unreasonable processes resting at the opposite end,

---

[12] The point made here is a narrow one: a person who reviews a computer screen showing information that the person knows will be used to populate fields on the proof of claim form in a reliable, predictable way, can be said to have "read" the proof of claim form as long as the person has independent familiarity with the actual form. In these limited circumstances, there is little to be gained by imposing a requirement that the person's eyes pass over the actual proof of claim form. Whether the same is true for a proof of claim asserting a secured claim or a priority claim is left for determination another day.

and other processes falling in the middle.  *See* <u>Mohammed v. Union Carbide Corp.</u>, 606 F. Supp.

252, 261 (E.D. Mich. 1985) (observing that "there are many ways by which [a litigant] can

reasonably apprise himself of the legitimacy of a claim prior to pursuing it in court").  In certain

respects, Resurgent's process falls somewhere in the middle of the spectrum.  In the abstract, it

was not unreasonable for Resurgent to rely on an automated process for transferring data to

proofs of claim and to require claims processors to review a screenshot of that information for

discrepancies identified by a computerized system, as these processes may very well have

increased accuracy by minimizing human error.  It was, however, objectively unreasonable for

Resurgent to rely solely on the data string in populating the Cushman POC when it was required

to report a last transaction date and the data string did not contain a last transaction date.  In this

respect, Resurgent violated Rule 9011(b).

### iv. The Propriety of Sanctions Under Rule 9011(c)

The parties' arguments about the propriety of sanctions under Rule 9011(c) focus on

Resurgent's prior practice of affixing Ms. Gaines's signature to all unsecured proofs of claim

regardless of who later reviewed them, and Resurgent's prior practice of reviewing those proofs

of claim by causing its claims processors to review the BKS screen rather than the form itself.

Resurgent contends that it should not be sanctioned under Rule 9011(c) because: (a) its change to

its signature practices in 2015 obviated any need for specific deterrence, and the amendment to

the proof of claim form in 2016 eliminated any need to generally deter others from signing a

proof of claim without personally reviewing it; and (b) there is no evidence that its prior

signature practices caused any harm, or that it engaged in those practices in willful violation of

the law or with the intent to injure others.  Resurgent also argues that it should not be required to

amend the Cushman POC because the amended proof of claim would be the same as the one

currently on file, and that remedy would be "tantamount to disallowing" the claim. The UST

responds that Resurgent should be subject to a significant sanction under Rule 9011(c) because it

cut costs and "undermined the foundations of the claims system." From the UST's perspective,

the instructions on Official Form 10, the settlement of the Maryland proceeding in 2011, and the

email sent by Mr. Faliero in 2014 should all have placed Resurgent on notice that its signature

practice was improper. The UST also contends that Resurgent should be required to amend the

Cushman POC because it contains inaccurate statements of principal, interest, fees, and the last

payment and last transaction date, as well as a "radically incorrect and misleading certification."

The Court has already concluded that although Resurgent's prior signature practice may

have failed to comport with the instructions on Official Form 10 and run afoul of Rule 3001(a),

that practice did not violate Rule 9011(b). Similarly, Resurgent's practice of reviewing the

information on the BKS screen rather than the proof of claim form did not contravene Rule

9011(b). Despite the parties' fixation on these particular practices, the Court has determined that

Resurgent violated Rule 9011(b) in a different way—by alleging a last transaction date in the

Cushman POC that lacked evidentiary support. The Court has also assumed—but not decided—

that Resurgent ran afoul of the rule by failing to secure an evidentiary foundation for its

allegations of principal, interest, and fees on the statement attached to the proof of claim.

Neither of these shortcomings warrants the imposition of sanctions under Rule 9011(c) in

this proceeding. The statements of principal, interest, fees, and last transaction date are, by

design, subsidiary allegations. *See* Fed. R. Bankr. P. 3001 Advisory Committee Note 2012

(explaining that disclosure of the information required by Rule 3001(c)(3) is intended to help the

debtor match the claim with an account). When those allegations are not set forth as required,

Rule 3001(c)(2)(D) expressly provides that "the court *may*, after notice and a hearing, . . . (i)

preclude the holder from presenting the omitted information . . . unless the court determines that

the failure was substantially justified or is harmless; or (ii) award other appropriate relief,

including reasonable expenses and attorney's fees caused by the failure." Fed. R. Bankr. P.

3001(c)(2)(D) (emphasis added). The unsupported allegations in the Cushman POC do not

warrant relief under Rule 3001(c)(2)(D) for several reasons. First, the creditor and account

number identified in the proof of claim match a debt scheduled by the Cushmans, and the

amount listed on the claim ($575.49) is relatively close to the amount of the scheduled debt

($540.00). Under these circumstances, the allegations at issue could not have interfered with the

debtors' ability to identify the claim. *See* In re Crutchfield, 492 B.R. at 73 (determining that

certain proofs of claim substantially complied with the spirit of Rule 3001, despite their failure to

provide all the information required by the rule, where the missing information did not affect the

debtor's ability to identify the claims); *cf.* Banco Popular de P.R. v. Torres (In re Torres), BAP

No. PR 10-036, 2011 WL 4592029, at *4 (B.A.P. 1st Cir. Jan. 19, 2011) ("The sufficiency of a

summary attached to a proof of claim must be analyzed on a case-by-case basis, taking into

account the detail provided, the content of the schedules, and the identity of the objector.").

Second, the claim set forth in the Cushman POC has been allowed and a 100% distribution has

already been made. As a result, precluding Resurgent from providing information under Rule

3001(c)(2)(D)(i) would serve no meaningful purpose at this juncture. Third, there is no

indication that the unsupported allegations in the Cushman POC caused any loss or damage. As

such, there is no "other appropriate relief" that might be dispensed under Rule 3001(c)(2)(D)(ii).

Because Rule 3001(c)(2)(D) is specifically tailored to remedy noncompliance with the

requirements of Rule 3001(c) and those specific remedies are not warranted here, resort to the

arsenal of Rule 9011(c) is neither necessary nor appropriate. *See* In re Andrews, 394 B.R. 384

(Bankr. E.D.N.C. 2008) (declining to issue an order to show cause why creditors should not be

sanctioned under Rule 9011 for filing proofs of claim that did not comply with Rule 3001(c));

*but cf.* In re Wingerter, 594 F.3d at 941 (indicating that noncompliance with Rule 3001 "might

be a factor in determining whether a Rule 9011(b) violation has occurred" depending on the

circumstances).

   If it were proper to invoke Rule 9011 for unsupported allegations of the type required by

Rule 3001(c), multiple factors would counsel against sanctioning Resurgent under Rule 9011 on

account of those allegations in the Cushman POC.  As an initial matter, contrary to the UST's

contentions, the Cushman POC was not "radically deficient."  Although further inquiry in the

form of a better process would have provided an evidentiary basis for the allegations of last

transaction date, principal, interest, and fees, those allegations were not critical to the validity of

the claim under section 502, and "further inquiry would not have shown the [proof of claim] to

have been baseless."  *See* Navarro-Ayala v. Hernandez-Colon, 3 F.3d 464, 468 (1st Cir. 1993);

*see also* Greenberg v. Sala, 822 F.2d 882, 887 (9th Cir. 1987) (suggesting that it is proper to

impose sanctions under Civil Rule 11 for a factual error that undermines a litigant's "entire case

at a stroke" but that restraint is in order in "less startling cases").  The unsupported allegations in

the Cushman POC did not result in a payment to which Resurgent was not entitled and did not

harm the Cushmans or their creditors.  *See* In re Nosek, 609 F.3d at 10 (reducing sanctions

imposed under Civil Rule 11 in the absence of identifiable prejudice).  There is also no

indication that the unsupported representations in the proof of claim "were a deliberate falsehood

or intended in any way to mislead the court or [the Cushmans] or [to] achieve anything for

[Resurgent]."  *See* id.  The problematic allegations in the Cushman POC do appear to have been

part of a broader pattern of activity.  *See, e.g.,* In re Sekema, 523 B.R. 651, 652 & n.2 (Bankr.

43

N.D. Ind. 2015) (discussing a Resurgent proof of claim that did not provide information about the date of the last payment or last transaction). However, since the publication of <u>Maddux</u> in 2016, Resurgent has voluntarily initiated an update to its systems that will permit itemization of principal, interest, and fees on all unsecured proofs of claim filed in the future. Given those voluntary efforts, sanctions are not necessary to bring Resurgent into compliance with Rule 3001(c)(2)(A) going forward. In the wake of this decision, the Court expects that Resurgent will engage in a similar effort with respect to the last transaction date that must be reported under Rule 3001(c)(3)(A)(iii).

Ultimately, requiring Resurgent to amend the Cushman POC would elevate technical procedural requirements over substance, as there is no dispute that the Cushmans were liable for the debt in the total amount set forth in the proof of claim. *See* <u>In re Shank</u>, 315 B.R. 799, 801 (Bankr. N.D. Ga. 2004) ("[T]here is no reason to require amendment of claims when, as here, there is no showing that there are any disputes about the debtor's liability on the claims or their amounts."). If any sanction under Rule 9011(c) were warranted for the conduct at issue here, a formal reprimand or admonition would be sufficient.

**D.    Section 105(a)**

The Court will not utilize its authority under 11 U.S.C. § 105(a) to sanction Resurgent for filing the Cushman POC. Under section 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).[13] Section 105(a) may serve as "a source of authority for the bankruptcy court's imposition of sanctions in an appropriate case." <u>Jamo v. Katahdin Fed. Credit Union (In</u>

---

[13] Resurgent theorizes that the authority provided by section 105(a) is coextensive with the Court's inherent authority. Resurgent cites several decisions, but none of them are binding authority. Accordingly, the Court analyzes sanctions under section 105 and sanctions under the Court's inherent powers as separate and distinct matters.

re Jamo), 283 F.3d 392, 403 (1st Cir. 2002).  Specifically, a court may "invoke § 105(a) if the

equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the

Code, so long as the court acts consistent with the Code and does not alter the Code's

distribution of other substantive rights[.]"  Bessette v. Avco Fin. Servs, Inc., 230 F.3d 439, 445

(1st Cir. 2000) (citation omitted) (quotation marks omitted).  For example, section 105(a) may

appropriately be used to "enforce a specific code provision," such as the discharge injunction of

section 524.  Ameriquest Mortg. Co. v. Nosek (In re Nosek), 544 F.3d 34, 43 (1st Cir. 2008)

(quoting Bessette, 230 F.3d at 444); *see also* In re Pratt, 462 F.3d at 20-21 (vacating ruling that

creditor had not violated the discharge injunction and remanding for a determination of damages

under section 105(a)).  In the absence of an antecedent violation of the Code or a related court

order, section 105(a) will not ordinarily provide a basis for sanctions.  *See* In re Nosek, 544 F.3d

at 49-50 (vacating damages awarded under section 105(a) because neither section 1322(b) nor

the debtor's confirmed plan specifically proscribed the sanctioned conduct); In re Jamo, 283 F.3d

at 404 (vacating sanction imposed under section 105(a) in the absence of "any antecedent

violation either of the automatic stay or of some other independent provision of the Bankruptcy

Code").  Although the UST suggests that Hann v. Educ. Credit Mgmt. Corp. (In re Hann), 711

F.3d 235 (1st Cir. 2013) approved the imposition of sanctions under section 105(a) in the

absence of any antecedent violation of a specific Code provision or court order, this Court reads

that case differently.  In Hann, the First Circuit affirmed sanctions imposed against a creditor

who filed a proof of claim, failed to respond to the debtor's objection to the claim, and later

sought to collect on the claim in violation of an order that sustained the objection and allowed

the claim "in the amount of $0.00" and in contravention of the discharge injunction.  Id. at 239-

43.  The creditor in Hann flouted a court order and the discharge injunction.  Here, the UST has

not established that Resurgent violated a specific Code provision or a related court order in a course of conduct abusive of the bankruptcy process.

The processes that Resurgent used to generate and submit the Cushman POC did not comply with Rule 9011 in certain respects and may have infringed Rule 3001. Under the right set of circumstances, conduct that violated Rules 3001 and 9011 could be discouraged or remedied in accordance with those rules. As already explained, those circumstances are not present here. If they were, the Court would dispense the relief contemplated by the rules instead of deploying the equitable powers conferred by section 105(a). *See* Moushigian v. Marderosian, 764 F.3d 123, 128 (1st Cir. 2014) (indicating that section 105(a) should not be applied in a manner that erodes the predictability of the Federal Rules of Bankruptcy Procedure); In re Freeman-Clay, 578 B.R. at 443 ("When the Bankruptcy Code and Rules contain specific remedies for violation of a specific section of the Code or Rules, the Court should not use § 105 to create additional remedies."). Although Resurgent's processes were not best in class, they did not collide with any identifiable right provided by the Code. *See* In re Pedro, No. 14-02972, 2016 WL 869754, at *3 (Bankr. D.P.R. Mar. 4, 2016) (explaining that the allowance of claims is governed by the Code, and that noncompliance with the related Federal Rules of Bankruptcy Procedure does not result in disallowance). Under these circumstances, resort to section 105(a) is neither necessary nor appropriate.

### E.    Inherent Powers

The Court is also unwilling to use its inherent powers to sanction Resurgent for filing the Cushman POC. "Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017) (quotation marks omitted).

46

"That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process[,]" id. (quotation marks omitted), such as failure to comply with a court order, Charbono v. Sumski (In re Charbono), 790 F.3d 80, 83 (1st Cir. 2015), fraud on the court, or the disruption of ongoing proceedings, id. at 86.[14]  Civil Rule 11 does not modify the inherent power of a court to sanction abusive conduct.  Chambers, 501 U.S. at 48-49.  The "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Id. at 49.  If the rules are not up to the task, "the court may safely rely on its inherent power."  Id. at 50.  But when conduct can be adequately sanctioned under the rules, "the court ordinarily should rely on the [Civil Rules] rather than the inherent power."  Id. at 50.

The UST asserts that because Resurgent "has repeatedly and deliberately filed documents in clear violation of the unambiguous instructions on the Court's own form, the Court may properly invoke its inherent power to regulate conduct before it and protect against litigation abuses which threaten to impugn the court's integrity."  The UST may be motivated by a concern that, in the absence of a significant sanction that grabs the attention of Resurgent and others in the debt servicing industry, parties in interest will only be able to test and force compliance with the rules or the instructions on the proof of claim form on a claim-by-claim basis.  If this is the UST's concern, the concern is understandable.  There is no doubt that testing compliance with the proof of claim requirements on a case-by-case basis would be expensive and burdensome, perhaps even prohibitively so.  In the right case, a significant sanction designed to remedy harm to the integrity of the bankruptcy system and to provide an effective deterrent could be imposed.

---

[14]  The Court is unpersuaded by Resurgent's argument that Charbono was overruled by Goodyear Tire & Rubber. In general, Goodyear Tire & Rubber dealt with the necessary causal link between a party's bad faith and an award of attorney fees.  Id. at 1186.  Charbono addressed a bankruptcy court's inherent power to coerce compliance with its own orders.  790 F.3d at 83.

In the final analysis, however, the UST has simply not established that this is the right case for that type of sanction.  *See* <u>In re Freeman-Clay</u>, 578 B.R. at 443-44 (declining to impose an inherent power sanction where the conduct at issue was governed by Rule 9011).[15]

### IV.    Conclusion

Resurgent seeks a declaration that it is not subject to sanctions under Rule 9011, section 105(a), the Court's inherent powers, or "any other authority" on account of the Cushman POC. The parties briefed the issue of sanctions under Rule 9011, section 105(a), and the Court's inherent powers.  They did not brief the issue of whether sanctions are warranted under some "other authority."  As such, the Court deems that aspect of Resurgent's complaint waived. Resurgent is entitled to a summary judgment on its complaint for a declaration that it is not subject to sanctions under Rule 9011, section 105(a), or the Court's inherent powers for filing the Cushman POC, and that it need not amend that proof of claim.  A separate order will issue.

Dated:  June 29, 2018

_____
Michael A. Fagone
United States Bankruptcy Judge
District of Maine

---

[15]  There is no need to resolve the parties' disagreements about whether bad faith must be established to support the imposition of any sanction under the Court's inherent powers or section 105(a), whether bad faith has been established here, and whether any non-compensatory sanction must be preceded by the protections ordinarily provided in a criminal proceeding.